Patrick McEvoy et al., Appellants, v. James P. Christensen et al., Appellees.

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts—
1 Levy—Limitation. The authorized annual levy of not to exceed $50 for each person of school age is not limited by the amount of funds on hand at the time the board makes the levy. (Sec. 2794-a, Par. b, Code Supplemental Supplement, 1915.)

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts—
2 Levy—Misdescription. There being but one general fund in consolidated school districts, it is immaterial that the levy is entered on the tax records under the head of "Teachers' Fund."

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts—
3 Petition for Consolidation—Who Are "Electors"? Male voters alone are to be counted in determining the sufficiency of a petition for the consolidation of school districts, a woman not being an "elector," even in view of Sections 1131 and 2747, Code, 1897, within the meaning of Section 2794-a, Code Supplemental Supplement, 1915, nor within the meaning of the Constitution.

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts—
4 Sufficiency of Petition—Findings of Board—Collateral Attack. Whether the finding of the board of directors that a petition for the consolidation of school districts was signed by the required number of electors can be questioned, in a proceeding to enjoin the collection of a tax levy by the board after consolidation, quære.

SCHOOLS AND SCHOOL DISTRICTS: Elections—Exclusion of
5 Women Voters. It cannot, in reason, be contended that women were denied the right to vote at a school election, when no woman presented herself to vote, when the school officials in no manner questioned the right of women to vote, and when there was no showing that such officials were not fully equipped with ballots, ballot boxes, etc., to receive the votes of women.

PLEADING: Construction—Confused Numbering of Paragraphs—
6 Admissions. Where a pleader confuses the numbering of his paragraphs, an admission by the adversary will not, if avoidable, be construed as applying to a particular paragraph, when such construction would be fatal to the adversary's contention.

*Appeal from Pottawattamie District Court.—*Thomas
Arthur, *Judge.*

Tuesday, September 19, 1916.

Rehearing Denied, Saturday, January 13, 1917.

Suit to cancel the levy and enjoin the collection of taxes
for school purposes of the Consolidated Independent School
District of Beebeetown, resulted in the dismissal of the peti-
tion.   The plaintiffs appeal.—*Affirmed.*

, *Addison G. Kistle* and *Viggo Lyngby,* for appellants.

R. B. McConlogue, Roadifer & Roadifer and C. W. Kel-
logg, for appellees.

Ladd, J.—An election was held in the schoolhouse of
Prairie View Independent School District in Harrison County
on August 15, 1914, to determine whether the Consolidated
Independent School District of Beebeetown should be organ-
ized, composed of the districts and parts of districts described
in a petition duly approved by the county superintendents.
A majority of those voting favored the proposition, and direc-
tors were chosen January 26th following.   On August 14,
1915, the board of directors fixed the amount required for the
general fund as $6,000, and that necessary to meet the inter-
est on bonds to be issued at $650, and certificates were made
out accordingly, and filed with the respective auditors of
Harrison and Pottawattamie Counties.   The levy of 31 mills
necessary to raise this was regularly made in Harrison
County, but the levy in Pottawattamie County, within which
were four sections of land included in the new district, ap-
pears on record under the column headed "Teachers' Fund."
The levy was higher than previously made for school pur-
poses in any of the districts consolidated, and it appears that
about $2,000 had been turned over by the several districts

to the new district, and was on hand. Other facts essential to a full understanding of the case will appear as we proceed with the discussion.

I. The limit for the support of consolidated schools such as contemplated is fixed by Section 2794-a, Par. b, Code Supplemental Supplement, 1915, at $50 per pupil residing in the district; and it is argued that, since over $2,000 was on hand, the certification of $6,000, as required, would exceed this sum. But the limitation is of the "levy for the general fund of said school . . . which shall not exceed $50 for each person of school age," and not a limitation on the amount that may be on hand at any one time. In other words, the resources of the district to be considered by the directors are not involved in the limitation of the additional sum which may be raised by levy. As there were 129 pupils, the levy was within the limitation of the statute.

*1. Schools and school districts: consolidated districts: levy: limitation.*

II. Nor is the circumstance that the record of the board of supervisors of Pottawattamie County indicated that the levy of 31 mills was for the "Teachers' Fund" of any consequence. It appeared that the levy was for the purposes of a consolidated independent school district; and, as this could only be for the "general fund," the error manifestly was merely clerical,—a mere irregularity,—in no manner affecting the validity of the levy. See *S. C. & St. P. R. Co. v. County of Osceola,* 45 Iowa 168; *Robbins v. Magoun,* 101 Iowa 580.

*2. Schools and school districts: consolidated districts: levy: misdescription.*

III. Section 2794-a of the Supplemental Supplement to the Code, 1915, provides that, "when a petition describing boundaries of contiguous territory containing not less than 16 sections within one or more counties is signed by one third of the electors residing on such territory," and approved by the county superintendents of schools, the question of the organization of a consolidated

*3. Schools and school districts: consolidated districts: petition for consolidation: who are "electors"?*

independent school district thereof shall be submitted at an election to be called as therein directed, at which election "all voters residing in the proposed consolidated district shall be entitled to vote by ballot for or against such separate organization." The parties stipulated that a witness would have testified, if present, subject to objection, that less than one third of such electors signed the petition, if women over 21 years of age residing in the district were counted as electors, but that no women presented themselves to vote or voted. There were no ballots at the election booths with the words "Woman's ballot" printed thereon.

The law required the board of directors of the school corporation within the proposed district "having the largest number of voters" to ascertain whether the petition filed was "signed by one third of the electors residing on such territory," and only upon so finding to call the election. Whether the correctness of its decision may be questioned in this proceeding is not broached by either party, save as raised by the plea of former adjudication, and therefore is not considered. But see *Jordon v. Hayne,* 36 Iowa 9, and *Ryan v. Varga,* 37 Iowa 78. It may be assumed that the board concluded that the statute, by using the words "electors residing in such territory," meant males possessing the qualifications of voters. An elector is defined by Bouvier's Dictionary as "one who has the right to vote for public officers; one who has the right to vote." In *O'Flaherty v. City of Bridgeport,* 64 Conn. 159 (29 Atl. 466), it is said:

. "The Constitution has given to the word 'elector' a precise, technical meaning, and it is ordinarily used in our legislation with that meaning only. An 'elector' is a person possessing the qualifications fixed by the Constitution, and duly admitted to the privileges secured, and in the manner prescribed by that instrument."

The same view is expressed in *In re Application of Car-*

*4. SCHOOLS AND SCHOOL DISTRICTS: consolidated districts: sufficiency of petition: findings of board: collateral attack.*

*ragher,* 149 Iowa 225; *State v. Tuttle,* 53 Wis. 45 (9 N. W. 791); *Bergevin v. Curtz,* 127 Cal. 86 (59 Pac. 312); and *City of Beardstown v. City of Virginia,* 76 Ill. 34, 39. See, also, *Coggeshall v. City of Des Moines,* 138 Iowa 730, 736.

Whenever the legislature employs the word "elector," without qualification or explanation, the word may be assumed to have reference to persons authorized by the Constitution to exercise the elective franchise. That instrument (Section 1 of Article 2) defines who are electors:

"Every male citizen of the United States, of the age of 21 years, who shall have been a resident of this state 6 months next preceding the election, and of the county in which he claims his vote, 60 days, shall be entitled to vote at all elections which are now or hereafter may be authorized by law."

Section 1131, Code, 1897, does not purport to enlarge these qualifications, nor to declare women electors. It merely specifies certain subjects upon which discrimination will not be tolerated, by providing that:

"The right of any citizen to vote at any city, town or school election, on the question of issuing any bonds for municipal or school purposes, and for the purpose of borrowing money, or on the question of increasing the tax levy, shall not be denied or abridged on account of sex."

See Section 2747, Code, 1897.

This is not inconsistent with the section of the Constitution quoted, for that relates to qualifications to vote for public officers (*Coggeshall v. City of Des Moines,* supra); and, as said, though according woman the right to express her preference on the questions enumerated, does not create her an elector. For these reasons, the board of directors rightly decided that women were not to be counted in ascertaining whether the petition was "signed" by one third of the electors "residing" in the proposed district.

IV. It is also argued that the organization of the consolidated independent school district was not valid, for that

women were denied the right to vote on whether such a dis-

5. SCHOOLS AND
SCHOOL DIS-
TRICTS: elec-
tions: exclusion
of women
voters.

trict should be created. No woman pre-
sented herself at the polls or offered to vote,
and the right of women as a class to cast
ballots on such issue was in no manner chal-
lenged by election officers or others. This being so, the right
of any citizen to vote was not denied or abridged on account
of sex. In *Coggeshall v. City of Des Moines,* 138 Iowa 730,
the right of women as a class to participate in the election
was denied by the municipal and election officers, and in this
respect the case is to be distinguished from this case. True,
Section 1131 of the Code, 1897, exacts that separate ballots
shall be furnished and these deposited in a separate box, and
a separate canvass thereof made. For all that appears, all
this might have been done, had any of the female residents
of the district required ballots. Though separate ballots are
to be furnished, this does not mean that they be different
from those furnished male voters. *Chambers v. Board of
Directors,* 172 Iowa 340. There is no showing that an insuf-
ficient number was in the hands of the election officers, or
that ballots could not or would not have been furnished if
requested, and a separate ballot box provided, had one been
necessary. The record precludes any inference that women,
individually or as a class, had been denied the privilege of
participating in the election. This being so, we have no occa-
sion to inquire whether organizing the consolidated inde-
pendent school district involved an increase of tax levies.
See *Younker v. Susong,* 173 Iowa 663.

V. Appellants contend, however, that, because of admis-
sions contained in the answer, the relief prayed should have
been awarded. The petition, after reciting the proceedings

6. PLEADING: con-
struction: con-
fused number-
ing of par-
agraphs: admis-
sions.

in the matter of organizing the district, al-
leged in Paragraph 7 that the election held
on July 15, 1914, was void for that: (1) The
petition for the proposed district was not

signed by a sufficient number of electors; (2) not all the elec-
tors entitled to vote were permitted to do so, in that women
were denied such privilege; (3) the proposed district does
not contain 16 sections of land; (4) no notice of the election
was given the electors; (5) no ballot was used as provided
by law; and (6) there was no qualified board of directors of
Prairie View Independent School District with which the peti-
tion was filed.   The next paragraph, though the eighth in
fact, also was numbered 7; and therein it was alleged that a
tax levy of $6,000 for general purposes was made by the direc-
tors of the Consolidated Independent School District of Bee-
beetown, and duly certified to the boards of supervisors of
Harrison and Pottawattamie Counties, which attempted to
make a tax levy of 31 mills to raise such amount for the
"Teachers' Fund."   In the ninth paragraph, numbered 8 in
the petition, the plaintiff alleged that such levy was void, for
the reasons: (1) That there was no legal school district capa-
ble of estimating a school tax or asking that it be levied;
(2) that the estimate was not made by duly elected and quali-
fied directors of said alleged district; (3) that the boards of
supervisors of the respective counties did not make the taxes
levied of 31 mills, as provided by law; and (4) that the levy
is in excess of the legal levy authorized by law.

After responding to the first 6 paragraphs of the peti-
tion, the defendants, in the answer, "admit that, on or about
the 14th day of August, 1915, there was certified by the sec-
retary of the Beebeetown Independent District a tax levy of
$6,000, and also the amount necessary for teachers' fund was
duly certified to the boards of supervisors of Harrison and
Pottawattamie County.   Admits Paragraph 8."   The an-
swer then "denies each and every allegation contained, ex-
cept those therein before admitted," and pleads a former
adjudication.

Evidently, after detailing the facts concerning the levy,
defendants intended to admit the paragraph of the petition
relating thereto, erroneously marked in the petition "Para-

graph 7," though in fact the eighth paragraph. That marked "Paragraph 8" merely states legal conclusions, such as were thought necessarily to follow from the facts alleged in the two previous paragraphs, viz.: that there was no legal district or qualified school directors, because the petition for organization of proposed district was not signed by one third of the electors residing therein, and because of the denial of the right to vote to voters residing on the territory of the proposed district; and that there was a defect in making the levy. These were the legal conclusions sought to be drawn from the fact allegations of the petition, which the defendants were contending ought not to result from the facts pleaded. Surely, counsel ought not to be held to have admitted these legal conclusions, necessarily fatal to their defense, unless such inference is unavoidable. The other construction is open, and we are satisfied that the admission was of the facts concerning the levy in the eighth paragraph of the petition (marked "Paragraph 7"), and that reference to the legal conclusions stated in the paragraph marked "8," to which no response was necessary, was not intended. Having found that the organization of the consolidated district was not invalid in the respects contended, and that the tax levies were valid, there is no occasion for the consideration of the plea of former adjudication.—*Affirmed*.

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.