F. C. SEARS et al., Appellees, v. CITY OF MAQUOKETA et al., Appellants.

**ELECTIONS:** ''Electors''—Women Voters—Bonds. The term 1 "elector," unqualified and unexplained, means a *constitutional* elector. A constitutional elector is a *male* person. Therefore, when a statute requires "*a majority of all electors voting*," as a condition to the issuance of bonds, it means the same as though the statute had omitted "elector" and used the terms "male voters," *even though women are permitted to vote on such bond issue.* So held under Sec. 1306-e, Code Supp., 1913, providing for bond issues for specified public utility purposes.

**STATUTES:** Unreasonableness. The plea of unreasonableness can 2 have no weight on the construction of a valid, unambiguous statute. So held where statutes authorized women to vote on bond issues, but provided. in effect, that *their* favorable vote might not be considered in determining whether the proposal had received the required favorable vote. (Sec. 1306-e, Code Supp., 1913.)

*Appeal from Jackson District Court.*—A. J. HOUSE, Judge.

MARCH 12, 1918.

REHEARING DENIED JUNE 24, 1918.

THE district court enjoined the city of Maquoketa from issuing bonds to secure funds with which to construct a light plant. Hence this appeal.—*Affirmed*.

*D. T. Bauman* and *Clark & Byers*, for appellants.

*F. D. Kelsey* and *Barnes, Chamberlain & Hanzlik*, for appellees.

SALINGER, J.—I. The issuance of these bonds was rightly restrained. unless the proposal to issue had the support of such a majority as Section 1306-e, Code Supple-

ment, 1913, requires. The vote in favor

1. ELECTIONS:
"electors:"
women voters:
bonds.

must be: (a) "A majority of all the *electors* voting at such election;" (b) it must be larger than half of the vote at the last preceding municipal election. Women were authorized to vote upon this bond issue. Section 1131, Code. If the favorable votes cast by them may be counted in determining whether the proposition had the majority required by Section 1306-e, then it had such majority; otherwise not. The exact question is, Has the legislature declared that, though the women were authorized to vote, their favorable vote may not be considered in determining whether the proposal has received the statutory majority? Was "electors" intended to mean male voters? Assuming, for the sake of argument, that it is illogical to permit one to vote and to exclude him from consideration on the question of whether a majority supports the proposition he has voted on, yet the legislature has power to do illogical things, and the cure lies with the legislature, and not the courts. The mayor has a right to vote in some cases. Yet it is settled his vote may not be counted in determining whether some proposition he has supported has a required majority of the council. As the legislature has the power to permit women to vote on whether bonds shall be issued, and also the power to exclude them from the privilege, of course it has power to grant the privilege and to put limitations upon the privilege. It follows, therefore, that it *may* authorize women to vote on this question, and provide at the same time that their supporting vote may not be counted in determining whether there is a required majority. And the fact that the right to vote on bond issues has been validly granted them does not make women "electors." *McEvoy v. Christensen,* 178 Iowa 1180. On the other hand, while the legislature has no power to make women electors, it can empower them to vote on bond issues, and *can* provide that the issue is authorized if it has

a majority made up of the favorable votes of both men and women. And it may be conceded that, though the statute, in terms, requires a majority of the electors voting, this does not necessarily exclude that "elector" is used as a synonym of "person authorized to vote thereat." Finally, the question is, In what sense did the statute use the word "electors?"

If it be utterly against reason that the word was used in the sense of "male voter," that fact will give powerful support to the claim that it was not used in that sense. Is

2. STATUTES: un-reasonableness.

there such unreasonableness? We think not. At the municipal elections which are made the standard of measurement, men alone vote. At the election in review, both men and women vote. It can fairly be said the legislature had in mind that the comparison should be made upon a count of the male votes supporting the bond issue, because otherwise there would be a limitation which usually would be no limitation. That is to say, a requirement that a bond issue should have more than the equal of half the votes cast by males alone will be too easily met by the favorable vote at an election at which the total vote cast would naturally be much larger than that at an election at which only men might vote. In fewer words, we think the legislature intended that the comparison should be made by measuring male votes with male votes.

Utter unreasonableness being disposed of, other canons of construction must be considered. Words are to be given their accepted meaning in the law. An elector is one who has the general right to vote and the right to vote for public officers. Bouvier's Dictionary.

In *McEvoy v. Christensen*, 178 Iowa 1180, we quote with approval the language of *O'Flaherty v. City of Bridgeport*, 64 Conn. 159 (29 Atl. 466), that:

"The Constitution has given to the word 'elector' a pre-

cise technical meaning, and it is ordinarily used in our legislation with that meaning only. An 'elector' is a person possessing the qualifications fixed by the Constitution, and duly admitted to the privileges secured and in the manner prescribed by that instrument."

And we say the same view is expressed in a large number of cases, which we cite, and which includes *Coggeshall v. City of Des Moines*, 138 Iowa 730.

It is said in *McEvoy's* case:

"Whenever the legislature employs the word 'elector,' without qualification or explanation, the word may be assumed to have reference to persons authorized by the Constitution to exercise the elective franchise."

The statute invoked here uses the word without any qualification, except that it excludes electors who did not vote on the proposition involved.

Cases like *Younker v. Susong*, 173 Iowa 663, have no applicability. They merely hold that Section 1131 of the Code authorizes women to vote on certain propositions. But that statute does not contain the word "electors." And we have settled that, therefore, it does not purport to "declare women electors." *McEvoy v. Christensen*, 178 Iowa 1180. And in *Coggeshall v. City of Des Moines*, 138 Iowa 730, it is expressly declared that the right to express a preference on enumerated questions "does not create of her an elector."

We are of opinion that the legislature, in requiring a majority of electors equal to the majority at the last preceding municipal election, had in mind that the majority at said last election was a majority of the votes cast by male voters only; that it used the word "elector" advisedly, because it did not desire a majority made up of male votes only, to be equalled by a majority made up of the votes of both male and women voters; that it employed the word "elector" in its accepted law meaning, and thereby excluded women, for they are not authorized to participate in any voting which

might not be done by non-electors.   We think that *McEvoy v. Christensen*, 178 Iowa 1180, and the cases therein cited, control us, and compel us to hold that the bond issue here did not have the majority demanded by the law.   It follows that enjoining the issue was right, and must be—*Affirmed*.

PRESTON, C. J., LADD and EVANS, JJ., concur.