Section 6 of the petition, which contains the subject of the complaint against the vice-chancellor, is as follows:
"6. Said John J. Fallon, vice-chancellor, is prejudiced and biased, and incapable of rendering and advising an impartial judgment because
"(a) Of the failure of the legislature of the State of New Jersey to confirm his appointment as prosecutor of the pleas of Hudson county by the governor of New Jersey in 1923.
"(b) The activities of the said John J. Fallon, as corporation counsel of the city of Hoboken and county counsel of the county of Hudson, have been under investigation by the said joint committee with reference to the award of a contract by the city commission of the city of Hoboken to James J. McFeeley, a brother of Commissioner Bernard N. McFeeley, of the city of Hoboken, while the said John J. Fallon was corporation counsel of the city of Hoboken, with reference to the appointment of Franklin Minturn, as secretary to the county counsel, while the said John J. Fallon was county counsel of Hudson county, as appears by the record of the proceedings of the said joint committee, the investigation of the latter incident having been replied to by the said John J. Fallon in the public press, and the motives of the said joint committee assailed by the said John J. Fallon, as appears by a news article in the Jersey Journal of September 14th, 1928, a copy of which is hereunto attached.
"(c) The said John J. Fallon, while county counsel and corporation counsel as aforesaid, and at other times, was a prominent and active member of the political organization of which the said Frank Hague was and is the reputed leader."
Upon the hearing before me, counsel for the legislature moved to amend the petition by adding ground omitted from it but intended to be stated therein, as follows:
"Because (d) John Milton had acted for Hague in the transactions in which real estate was involved, handling vast sums of money; that Mr. Hague had used Mr. Milton's office, adjoining the chancery chambers for submitting to arrest, and that Mr. Milton was an intimate friend of the vice-chancellor." *Page 507 
This was not objected to, and was admitted. I had expected it would be put in writing and filed. It was doubtless the intention of counsel to do so, but, in the laborious work connected with this case, it does not appear to have been done, so I have been obliged to draw upon my memory as to what occurred. There was some elaboration upon what is here recited, but sufficient has been stated to indicate the scope of the amendment. It has been considered and is involved in the decision of the issue in the case before me.
While this is a habeas corpus secured by Frank Hague from Vice-Chancellor Fallon, the real parties in interest are the two houses of the legislature and also Mr. Hague. For brevity's sake the applicant will be called the legislature, and the respondent, Frank Hague, will of course be referred to by name. It may be remarked, by the way, that Mr. Hague is a prominent man, being mayor of Jersey City, standing high in the councils of his party, national, state and city.
So we have a case here in which the legislature, representing the state, is one of the parties; but, be it said, and it was conceded on the argument, that because the legislature is one of the parties and has appealed to the court, it stands before the court in exactly the same situation as does the other party. It is true that the legislature represents an independent branch of the state government, but in the eye of the law justice is even and exact, and no litigant, not even the state, is a preferred suitor, except as to speeding cause, hereinafter stated. And nothing on the score of prominence was claimed for Mr. Hague, nor could it have been. An apt illustration may be referred to: When a man is prosecuted for a crime, and if convicted might be fined and imprisoned, or even forfeit his life, by whom is he prosecuted? The state. The trial is presided over by an impartial judge, who charges the jury on the question of the benefit of doubt, and the presumed innocence of the defendant unless and until he be convicted by the jury, which he should be if proven guilty. The state and the defendant are by the judge treated alike.
The proceeding before me, namely, one to take an unfinished cause pending before a vice-chancellor from him and *Page 508 
conclude the hearing myself, is conceded to be novel. It certainly is one of first impression in this state, and having been given the fullest consideration it will now be decided upon the law which governs this class of cases.
Never yet, to my knowledge, and it is quite extensive, has an application been made to this or any other court to take a partially tried case out of the hands of a judge before whom it is pending upon the grounds here urged, but I am referred to the case of W.D. Cashin Co. v. Alamac Hotel Co., Incorporated,98 N.J. Eq. 432, as authority for the proposition. In that case a decree of foreclosure had been entered and an execution issued to the sheriff, who had advertised the sale of the property; whereupon the Alamac Hotel Company obtained an order to show cause before a vice-chancellor why the sale should not be adjourned to enable it to effect a reorganization and raise money to pay the mortgage debt, with a stay in the meantime. The Bankers Trust Company referred a petition to me to vacate the order and stay, and I held that the application upon which the order to show cause was granted disclosed no equity, that is, no right of action; that the Bankers Trust Company had an absolute right to enforce its decree and could not be hindered and delayed in the recovery of its mortgage debt by anything short of a sufficient defense made before decree or by defensive matter of some sort arising after decree, going to its enforcement; and none such was shown to exist. That case was not one to remove a vice-chancellor for bias and is clearly to be distinguished from the application presently before me. If here the legislature had denied the power of this court to take jurisdiction of the matter because of settled law to the contrary, and that, therefore, Mr. Hague was not entitled to prosecute the writ, a question would be presented somewhat analogous, doubtless, to that in W.D. Cashin Co. v. Alamac Hotel Co., Inc. No such claim is made, and such is not the case.
But, that the courts have jurisdiction in this class of cases has been settled beyond the peradventure of a doubt. SeeKilbourn v. Thompson, 103 U.S. 168; 26 Law Ed. (1880, *Page 509 Supreme Court of the United States) 377; McGrain v.Daugherty, 273 U.S. 135; 71 Law Ed. (1926, Supreme Court ofthe United States) 580; Cunningham v. Barry, 29 Fed. Rep.
(2d ser.) 817, in the United States circuit of appeals, third circuit, issued in pamphlet form but not yet officially reported. Jurisdiction in this court was not questioned.
Now, we go to the merits of this case. It is alleged that prejudice on the part of the vice-chancellor exists, because the senate of New Jersey failed to confirm his appointment as prosecutor of the pleas of Hudson county by the governor in 1923. It is significant to know that the senate of 1923 is not the legislature of 1928. While some of the same members are still in the senate by reason of re-election, it cannot be said, especially as matter of law, that Mr. Fallon was prejudiced for all time against the senate generally, and that he therefore cannot fairly decide a case in which the legislature is a party, and of which he has cognizance, because of his failure of confirmation five years ago. In this failure of confirmation nothing is shown to his discredit. He was not rejected by the senate, but his name, after confirmation being withheld for considerable time, was withdrawn by the governor. Presumably there was some political objection to his confirmation, but what it may have been has not been exploited before me, and I have no information concerning it. In fact I had forgotten all about the instance, and, doubtless, never knew anything beyond the mere fact, and know nothing more now.
It is further stated that because Mr. Fallon was corporation counsel of Hoboken, and county counsel of Hudson county, which were under investigation; that because as county counsel he appointed a secretary, as appears by the record, and made statements in the public press concerning that appointment, c.; and because Mr. Fallon, while county counsel and corporation counsel, and at other times, was a prominent, active member of the political organization of which Frank Hague was and is the reputed leader, and because he was intimate with John Milton, who acted for Hague, as stated, he is biased *Page 510 
and prejudiced against the legislature, whereby he is disqualified to sit as judge in this case.
But prejudice growing out of business, political or social relations is not sufficient to disqualify a judge. 33 C.J.1001. And prejudice against the cause or defense of a party is not a disqualifying prejudice. Ibid.
Generally it is held that an interest which a judge has in common with many others in a public matter is not sufficient to disqualify him. 33 C.J. 995.
In Co. Commrs. of Charles Co. v. Wilmer, 131 Md. 175, the court said (at p. 179): "The contention made by the appellant is that the disqualification is caused by a sentimental, as well as by a pecuniary interest," and (at p. 180): "The constitution or statutes of most, if not all, of the different states, contain a general provision to the effect that a judge shall not act as such in a cause in which he is interested; but the overwhelming weight of authority in construing the meaning that is to be attached to the provision is, that to bring about a disqualification, the interest must be a pecuniary or a personal right or privilege in some way dependent upon the result of the case as contradistinguished from every bias, partiality or prejudice which the judge may entertain with reference to the case."
While a judge should never commit himself upon any question either of fact or law which is liable to come before him until the matter is properly presented, mere expressions showing irritation, or unnecessary expession of opinion upon the justice or merits of a controversy, is not per se ground for disqualification. 33 C.J. 1009.
Again, the interest which disqualifies a judge is a direct pecuniary one, or one which involves some individual right or prejudice in the subject-matter of the litigation. Ibid. 992.
And surely no such interest exists in behalf of the vice-chancellor in this case. It nowhere appears, and in fact I understand it is disclaimed.
In McEwen v. Occidental Life Insurance Co., 172 Cal. 6, it was held (at p. 11) that erroneous rulings against a litigant, even when numerous and continuous, form no ground for a *Page 511 
charge of bias or prejudice, especially when they are subject to review. Nor are a judge's expressions of opinion, uttered in what he conceives to be a discharge of his judicial duty, evidence of bias or prejudice.
It was argued that the circumstances attending the issuance of the writ in this case indicated that the vice-chancellor had not read the rather voluminous petition and exhibits annexed, because he had not time to do so, and that Mr. Hague repaired to the office of Mr. Milton, in the same building with the chancery chambers where the vice-chancellor presided, and that Hague invited arrest there so that he could secure the issuance of a writ of habeas corpus and thus prevent being detained in custody at that time. It cannot be said that this was objectionable. Many defendants upon hearing that process is out for them, either in civil or criminal cases, go to the sheriff's office and submit to service or arrest. Defendants in divorce cases often do this for the purpose of receiving service of citation. Whenever it has come to my knowledge I have caused an investigation to be made to see whether or not there was collusion between the parties, for collusion is a defense in divorce cases, and the law disfavors divorce. It is the well known practice of judges in granting injunctions, certiorari
and habeas corpus writs to require counsel to state the contents of moving papers rather than laboriously read them and thus consume much time; the judge always satisfying himself by inspection of the papers that they are properly sworn to, and generally show cause of action for the granting of preliminary relief. It is not objectionable for counsel to arrange with a judge for a time and place of meeting for the purpose of applying for relief that is required instanter. If Mr. Hague had been unable to reach a judge at the time of his arrest and procure the allowance of a writ of habeas corpus, he would, of course, have been imprisoned, at least for the time being. For his counsel to have arranged with a judge, assuming that he did so, which counsel stoutly denies, was, nevertheless, unobjectionable. The preliminary proceedings about the attempt of the sergeant-at-arms to arrest Mr. Hague at his dwelling, and the arrest of the sergeant-at-arms *Page 512 
of the joint committee, c., and his appearance or production afterwards at the chancery chambers, are entirely collateral, and are not the subject of proceedings in the habeas corpus cause or on this application.
As to the observations of a judge upon the proceedings pending trial, I would say that it is quite the constant practice of all courts; and remarks are often made and questions asked which, of themselves, would indicate some view of the court upon the merits of the controversy. But such does not disqualify the judge or make it appear that when he comes to adjudicate the case after full hearing his decision will not be according to the very right of the cause.
We have a law in this state (Comp. Stat. p. 4121 § 224) which provides that no judge of any court who shall be related in the third degree to any of the parties, or interested in the event of the action, or have been attorney of record or counsel in the cause, shall sit; and by section 225, that all challenges to a judge for those causes shall be made previous to the trial or argument. And Mr. Justice Swayze, speaking for the supreme court, in Curtis v. Joyce, 90 N.J. Law 47, said (at p. 48): "Although this is a section of the Practice act, it enacts a rule which should govern in all courts. It would be intolerable to allow a litigant to speculate on the result of a case, and raise a question of jurisdiction only after decision. If the prosecutor did not know the alleged bias at the time, it may be his misfortune, but it is a misfortune arising out of a want of knowledge that it was his duty to acquire if he wanted to profit by it." Affirmed, 91 N.J. Law 685.
I am free to say that I give effect to this law in the court of chancery, and hold by analogy that it applies here, and have several times refused to consider a vice-chancellor disqualified from reference to hear a cause who did not fall directly within the provisions of the statutory rule. But, it is not pretended that this case falls within this act. It is here alleged that the vice-chancellor is prejudiced against the legislature for causes and reasons entirely outside the rule. Curtis v. Joyce is not the only New Jersey case that bears *Page 513 
upon the question of timely presentation of objections to a judge.
In Inhabitants of Readington v. Dilley, 24 N.J. Law 209 (atp. 210), it was held that a person who knew of objection to a judge at the time of his making a certain appointment, and did not make it then, will not be allowed to take advantage of it upon certiorari. And in Laure v. Singer, 100 N.J. Law 98, the court of errors and appeals held that where a defendant, besides pleading matter which would oust the jurisdiction also pleaded to the merits, and went to trial on them, was concluded.
Now, certainly the legislature knew of Vice-Chancellor Fallon's failure of confirmation, of his having held the office of corporation counsel of Hoboken, county counsel of Hudson county, of his political affiliations with Mr. Hague and Mr. Milton, and of his utterances which are complained of, before and at the time Mr. Hague procured the habeas corpus in this case. And it was therefore incumbent upon the legislature, through counsel, to make the objection immediately upon the return of the writ, or commencement of the hearing, if they desired to oust the judge by reason of alleged bias and partiality. This they did not do but went to hearing, and it was only after several days of trial before the vice-chancellor, that, provoked by his rulings, the legislature saw fit to question the propriety of the vice-chancellor's further sitting in the cause. That objection was, of course, timely as to rulings, but they of themselves, even if erroneous, do not show disqualifying bias, as elsewhere appears.
It is apparent all through the authorities cited, that an intendment is always made in favor of the judge objected to, and this, of course, is right, as there should be no preposession against him on the part of the court.
The authorities mentioned I am not at liberty to disregard, but, on the contrary, being controlled by the decisions of this state, I find that objection to the judge comes too late as to all matters not being rulings made upon the hearings before him, and as to those matters I cannot say that the vice-chancellor has that bias and prejudice against the legislature *Page 514 
which would disqualify him to conclude the hearing which he has begun without objection in this case. And I am not unmindful of the fact that when that which the law deems bias is shown, disqualification exists.
It is stated that Vice-Chancellor Fallon's name appears many times in the records of this inquiry. It was not stated what was said about him, so I am uninformed. Doubtless this mention is of the facts above stated and they have been already dealt with.
After full and careful consideration of this whole matter I have reached the conclusion that the vice-chancellor is not disqualified, and that the petition must be dismissed.
Gregory v. Gregory, 67 N.J. Eq. 7, was a case somewhat analogous in principle to this. There the defendant sought to have the chancellor refrain from signing a decree advised by a vice-chancellor and direct the further trial of the issue presented, before the same or another vice-chancellor or by the chancellor himself; it was held that it was the plain intent of the act creating the office of vice-chancellor for the chancellor to decline to review their findings, to leave the objecting party to obtain relief by appeal; yet there might be cases in which it was the duty of the chancellor not to refuse such a review, as when necessary to prevent discordant adjudications or to prevent an injury resulting from a refusal of a rehearing, when such injury could not be redressed on appeal; and it was held, further, that the circumstances disclosed no injury which might not be relieved on an appeal and presented no ground for the intervention of the chancellor. The cause at bar does not fall within either of the exceptions mentioned by the learned chancellor. An appeal is the right of the legislature if it should be unsuccessful in this litigation on the habeas corpus, and for that reason, if for no other, a case is not made which calls upon this court to stigmatize the vice-chancellor in this matter.
And there is another ground for denying the present application. In re Low, 88 N.J. Law 28, Mr. Justice Garrison, speaking for the supreme court in banc, held that the burden of proof must be borne by him who invokes the litigation. *Page 515 
That means that the legislature in this matter must show bias and prejudice by clear and convincing evidence, not that Mr. Hague is obliged to show that the vice-chancellor is not biased. The burden is not shifted, and on this burden alone the legislature has not shown that the vice-chancellor is legally prejudiced against it.
Sundry other cases have been cited before me, but they go rather to the merits of the application pending in this court before the vice-chancellor, and not upon the question to be decided by me.
There was one other matter strenuously argued upon this application: It was that the cause was being delayed before Vice-Chancellor Fallon, which indicated that it would not be decided and a decree made in time for an appeal which would be efficacious, as the legislature, before whom proceedings against Mr. Hague were taken, would expire at the time its successor was inducted into office on the second Tuesday of January ensuing (1929). This was stoutly denied by counsel for Mr. Hague. He claimed that the various continuances before the vice-chancellor were at the request of counsel for the legislature. The answer was that such matter had been pleaded before the vice-chancellor as required some short adjournment to enable counsel for the legislature to prepare to meet it. There is nothing unusual in this, and counsel for Mr. Hague indicated that, so far as he was concerned, he was ready to proceed with all convenient speed.
This is an important case and one in which the state is involved, as the legislature represents it, and it acts only by and through its agents. Expedition is of course desirable, and ought to be, and I think it is the object of the court and counsel to see to it that all reasonable dispatch is exercised.
In the court of last resort this doctrine of dispatch in the public business has been written into a stated rule of court. Seerule 35a, court of errors and appeals, wherein it is provided that cases wherein the state is actually a party and in interest, and certain other cases where the public interest is involved,c., may be advanced for argument. A recent case showing the celerity of hearing in matters of public interest *Page 516 
is that of the application of Hudson county for a declaratory judgment concerning the act of October 9th, 1928; and this both before the supreme court and also the court of errors and appeals. Upon this branch of the case I feel I should admonish court and counsel to proceed with all reasonable speed.
Order accordingly.