### EDWARDS et al. v. CARTER, State Auditor, et al.

No. 25073.   Nov. 7, 1933.

Rehearing Denied Nov. 21, 1933.

Hall & Thompson, for petitioners.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for respondents.

W. A. Ledbetter, appointed by and appearing for the Governor.

PER CURIAM. In this action, Honorable Wm. H. Murray, Governor of the state of Oklahoma, appearing pursuant to the provisions of section 3527, O. S. 1931, has, through counsel, filed herein a suggestion that the Justices of this court are disqualified to hear and determine the questions of law and fact herein, and has requested that they disqualify. The court deems it proper to determine this preliminary issue separate and apart from the main controversy, the merits of which will be alluded to only for the purpose of presenting the issue arising upon this request for disqualification.

By section 10, art. 23, of the Constitution, it is provided that "in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office. * * *" The salaries of three members of this court, to wit, Justices Cullison, Swindall, and Andrews, at the time of their election to their respective offices, had theretofore been fixed by legislative enactment at $6,000 per annum. Thereafter, the Legislature fixed the salaries of Justices of the Supreme Court and Judges of the Criminal Court of Appeals at the sum of $7,500 per year, said act having been approved on July 17, 1929. (Sess. L. 1929, ch. 273, sec. 1.) Chief Justice Riley and Justices McNeill, Osborn, Bayless, Busby, and Welch were elected to their respective offices since the effective date of said act. The Legislature has not attempted to change the amount of the salaries, directly or indirectly, of the three Justices above named; but, as to the other Justices, the Legislature, not changing the amount of said salary, in the last legislative session provided in its general appropriation bill for only the sum of $6,000 for each of said Justices, payable monthly, instead of the sum of $7,500, as theretofore fixed. The same situation exists with reference to the amount of and appropriation for the salaries of certain of the Judges of the Criminal Court of Appeals.

Notwithstanding the increase of the salary of the Justices of the Supreme Court, as hereinabove set forth, it is to be noted that neither of the three Justices above mentioned, Justices Cullison, Swindall, and Andrews, has sought to receive such increased compensation, deeming the above-quoted provision of the Constitution an inhibition against their receiving the same.

The general appropriation bill of the last Legislature for the fiscal biennium beginning July 1, 1933, became effective immediately prior to said date. On August 1, 1933, the State Auditor, acting under the provisions of said general appropriation bill, issued a warrant to Fletcher Riley, Chief Justice of this court, in payment of his July salary, not for the amount of said monthly salary, as fixed by law, but for the reduced amount as provided in said general appropriation bill. He refused to accept said warrant for said sum, and immediately filed an action in the Supreme Court seeking a writ of mandamus against the State Auditor and the State Treasurer to require issuance and payment of a warrant for the correct amount of his salary, as fixed by law, instead of the reduced amount, claiming that, under the provisions of the Constitution above set forth, the action of the Legislature was ineffectual to decrease the amount of his compensation during his term.

Thereupon, Chief Justice Riley and Justices McNeill, Osborn, Bayless, Busby, and Welch, who were similarly situated, disqualified themselves from participating in the decision of said action; Justices Cullison, Swindall, and Andrews, whose salaries had not in any wise been affected, not disqualifying in said cause. Thereupon, the Governor of the state being absent from Oklahoma, the Lieutenant Governor, performing as provided by law the duties of Governor, appointed and commissioned six special Justices, to wit, T. M. Robinson, W. A. Chase, Frank M. Bailey, V. R. Biggers, W. R. Chesnut, and A. W. Trice, to sit in the determination of said cause in lieu of those regularly elected Justices who had certified their disqualification therein. In that case, counsel, who represents the Governor in this case appeared and filed a suggestion of disqualification of Justices Cullison, Swindall, and Andrews and a request for their disqualification. The cause was orally argued and briefed and submitted to said court, composed as hereinabove set forth, and on September 6, 1933, said court rendered an opinion holding that by virtue of the provisions of the Constitution above quoted, the Legislature could not change the salary of the Chief Justice by legis-

lation enacted after his election and during his term, and that the Constitution itself made a proper appropriation of public funds with which to pay said salary regardless of the failure of the Legislature in its general appropriation bill to make a specific appropriation of a sufficient amount to pay said salary. This conclusion was reached upon the theory that the Constitution intended that the judicial department of government should always be and remain independent of the legislative and executive branches of government.

A petition for rehearing having been filed in said cause, the court unanimously held that the three Justices above named were in no wise disqualified to sit in said action. While petition for rehearing was pending, the Governor, in the name of the state of Oklahoma, filed an action in the district court of Oklahoma county seeking to enjoin the State Auditor and State Treasurer from issuing warrants in an amount greater than the sum appropriated by the Legislature, as above set out, to pay said monthly salary of the Chief Justice and other state officers. The district judge, Hon. Geo. A. Henshaw, issued a temporary restraining order as prayed for. Thereupon, when the attention of the Supreme Court, composed as hereinabove set forth, was, by application of Chief Justice Riley, directed to the conflict between the action of said court and the district court of Oklahoma county, the Supreme Court, exercising its supervisory powers over inferior tribunals, issued a writ prohibiting said district court from interfering with the orders and judgments of said court in so far as the salaries of Justices of the Supreme Court were concerned. No application to rehear, vacate, review, or modify said decision has been filed or is pending, and said decision, under the long established rules of the court, has become final.

The action at bar was filed by Thomas A. Edwards and James S. Davenport, Judges of the Criminal Court of Appeals, for a writ of mandamus to require the State Auditor and State Treasurer to issue and pay, respectively, warrants monthly for the salaries of said Judges for the correct amount as provided by law, notwithstanding the appropriation by the Legislature of a less sum than was necessary to pay same. It is conceded, of course, that no member of the Supreme Court is in any wise interested financially in the outcome of said suit, or the results thereof. But it is contended by the Governor, through his counsel, that the

members of the court are interested in the rule of law which the opinion of the special court promulgated, and that the "entire action of the special Supreme Court * * * is illegal and void, and its invalidity will be attacked by the intervener in this action."

Petitioners object to the regularly elected Justices of this court certifying their disqualification for the reason that, in event of their disqualification, the Governor of the state, who is one of the litigating parties in this action, is vested by law with authority to appoint the special Justices to sit in this action in lieu of the regularly elected Justices. We quote from their objection as follows:

"It is further a general principle running through the decisions that unless a judge is, in fact, disqualified, either by reason of interest in the subject-matter or by reason of public policy, that he should not disqualify but should discharge the responsibility of his office. In the instant case there is the further potent reason for the members of this court refusing to disqualify, for if they should do so, we would have the unseemly situation of a contender in an action selecting, naming and commissioning the arbiters to pass on his contention."

In the case of Ex parte Alabama State Bar Association (decided in 1890) 12 L. R. A. 134, the duty of a judge, upon claim of disqualification, is set forth as follows:

"But it can never rest in the discretion of a judge whether he will sit in a given cause. If he is not disqualified under the Constitution, it is his duty to sit, a duty which he cannot delegate or repudiate, and which no consent can devolve upon another" —and further, in said opinion, it is said:

"The interest which will disqualify must be a pecuniary one, or one affecting the individual rights of the judge. * * * That the interest relied on to disqualify must be a pecuniary one, and be affected by the event of the suit, and not remotely, is fully illustrated by the adjudged cases. Thus it has been frequently held that the interest of a taxpayer and citizen of a town was not such as to disqualify him to sit as a judge or juror in the trial of a cause to which the town was a party." Citing cases.

In the early case of Holt v. Holt, 23 Okla. 639, 102 P. 187, decided in 1909, Mr. Justice Dunn, speaking for the court, said:

"In order to disqualify, the interest of the judge must be in the subject-matter of the cause, and not merely in a legal question involved."

In the early case of People v. Edmonds, 15 Barb. (N. Y.) 529, it is said:

"A judge is precluded from acting in his

official capacity 'in any cause to which he is a party, or in which he is interested,' * * * but the prohibition does not extend to cases where the interest is simply in some question of law involved in the controversy. The statute very properly stops short of that, as judges must often, and necessarily, consider and decide questions which may be applicable to their own rights, or to their property, should they be fortunate enough to possess any."

In the case of Conkling v. Crosby (Ariz.) 239 P. 511, It is said:

"A judge ought not to withdraw upon a mere suggestion unless the cause of recusation is true in fact and sufficient in law; because the office of judge is one necessary for the administration of justice, and from which a judge should not be permitted to withdraw without sufficient grounds."

Many authorities are cited and analyzed in the opinion of Special Justice Trice, rendered in overruling the petition for rehearing in the case of Riley v. Carter, No. 24,-903, above referred to. (165 Okla. 262, 25 P. (2d) 666.) We deem it useless, therefore, to cite additional expressions from the various courts relating to our duties upon this application to disqualify.

It will be observed that, when the matters to be considered approached a direct pecuniary interest in the rules of law which might be determined therein, all such Justices whose rights might in any wise be even indirectly affected promptly certified their disqualifications to sit in said cause, and special Justices were appointed by the Lieutenant Governor, acting for and during the absence of the Governor from the state, to sit in their places. The members of the court have no financial interest in the result of this action, and the rule of law promulgated by the Supreme Court, composed as herein above set forth, may, or may not, be applicable to the rights of petitioners. Respondents earnestly contend, through the Attorney General, that same has absolutely no application. On this point, at this time, we express no opinion. It would be difficult to imagine a rule of law promulgated by this, or any other court, which might not directly or indirectly affect the substantial rights of the Justices of this court. We are citizens of the state and property owners. The rules of law promulgated by the various courts affect personal rights and property rights, and apply to the personal and property rights of the Justices to the same extent and in the same manner as they apply to the personal and property rights of other citizens.

The court has carefully considered the request of counsel for the Governor that the Justices of the court disqualify. The objection of petitioners, wherein they point out that the Governor is not only one of the litigating parties in this action, but that the appointive power is also vested in him in event of the disqualification of the regularly elected members of the court, is entitled to great weight and consideration. It must not be overlooked that not only was the legislative act making an insufficient appropriation approved by the Governor, but such action by the Legislature was espoused and encouraged by him as a legislative and political program, notwithstanding the provisions of the Constitution that the salary and emoluments of any public official should not "be changed after his election or appointment, or during his term of office." This constitutional provision is binding alike on every officer and citizen of this state, and applies with equal restraining force in any attempt to increase or decrease the salaries of public officers. To disqualify and permit one of the contending litigants to name and select the special Justices to whom the cause shall be submitted, is contrary to all legal precepts and is subversive of the proper independence of the judiciary in meting out justice to those who seek the jurisdiction of the court.

By our Constitution the powers of government were lodged in three co-ordinate branches—executive, legislative, and judicial. The Constitution, a grant of power from the people to their representatives and a limitation thereon, must guide and restrain such public representatives. The other branches of government may yield to temporary public clamor in their official actions, sometimes with comparatively little harm, but always there is the restraining check of the courts upon their illegal actions. But the judiciary must stand firm and steadfast, zealously upholding the Constitution and laws of the state. If the Justices of this court should take advantage of the present situation as an opportunity to avoid performing a duty which may be unpleasant, then each public officer whose salary was thus affected might and could file an action and claim the disqualification of the regularly elected Justices to sit therein. This would result in a swift-moving procession of special Justices to sit in such cases, entailing great expense upon the taxpayers of the state and great confusion in the administration of the law. As elected public officials, in whom the people have placed

their faith and trust in a manner provided by law, we shall apply the Constitution and laws to the rights of all citizens, and shall not hesitate to discharge in full measure the duties intrusted to us by the people.

Each member of the court feels that there is no legal disqualification of himself to sit in said cause, and there being no legal disqualification, we feel that we are not justified, over the objections of petitioners, in certifying that which in fact does not exist.

The request for disqualification is denied.

All the Justices concur.