J. J. PIUSER, Appellant, v. CITY OF SIOUX CITY et al., Appellees.

No. 42692.

SEPTEMBER 24, 1935.

Fred H. Free, for appellant.

H. Clifford Harper, A. O. Jepson, Frank Duggan, Bernard Brown, and D. F. Loepp, for appellees.

DONEGAN, J.—On the 19th day of August, 1932, there was filed in the office of the city clerk of the city of Sioux City, Iowa, a petition consisting of 353 separate sheets of paper purporting to contain the names of qualified electors of said city, asking the city council to call an election and submit thereat the question of voting general obligation bonds of the city in the sum of $2,500,000 for the purpose of erecting and constructing a municipal electric light and power plant. Pursuant to direction of the city council, the city clerk caused an examination to be made of the said petition in order to determine its sufficiency, and was about to report the result of such examination to the city council when, on the 25th day of August, 1932, the plaintiff herein instituted this action to enjoin the city clerk from certifying the legal sufficiency of said petition either in form or substance, and to enjoin the mayor and defendant commissioners of the said city from passing any resolution providing for or authorizing the calling or holding of any special election as requested in said petition. A temporary injunction was issued as prayed and thereafter issue was joined and the case proceeded to trial before Hon. R. A. Oliver, one of the judges of the district court of Woodbury county, Iowa, on September 26, 1932. Some testimony was taken in open court, but, it appearing that the trial of the case would involve a complicated search of records of registration and comparison with the names on the petition, the court ordered the case referred to a referee for the purpose of taking testimony, with direction to return his findings of fact. Pursuant to such order, further testimony was taken and early in January, 1934, the referee made a preliminary report of certain findings of fact with a request for further instructions. At this time Judge Oliver, who had ordered the reference, had been succeeded in office by F. H. Rice, as judge of the district court of Woodbury county, and the plaintiff filed objections

and exceptions to the findings of the report. He also objected to Judge Rice acting in the case on the ground that he was disqualified, and asked that the case be transferred to some other district judge. The court overruled both the motion for transfer and the exceptions to the report, and proceeded to give the referee the instructions requested in his preliminary report. Thereafter, the referee filed his final report, to which the plaintiff filed further exceptions in which he renewed his objections to Judge Rice acting in the case. Upon hearing, all such exceptions and objections were overruled, and the court entered a decree dismissing plaintiff's petition, dissolving the temporary injunction, and taxing the costs to the plaintiff. From this decree and the prior orders and rulings of the court, the plaintiff appealed.

While this action is in equity and, as such, is triable de novo in this court, the plaintiff has set out and argued fourteen errors relied upon for reversal. The propositions involved in these alleged errors go to the insufficiency of the petition to confer jurisdiction upon the city council, and to the disqualification of Judge Rice to hear or act in the case, and it is to these propositions that we now devote our attention.

Section 6239 of the Code, 1931, provides:

"Cities and towns when authorized to acquire the following named public utilities and other improvements may incur indebtedness for the purpose of:

"1. Purchasing, erecting, extending, reconstructing, or maintaining and operating waterworks, gasworks, electric light and power plants, or the necessary transmission lines therefor, and heating plants."

Section 6241 provides that no indebtedness shall be incurred for the purposes enumerated in section 6239 until authorized by an election. And section 6242 provides that proceedings for such election may be instituted by the council, but that, before an election may be called for any of the purposes enumerated in subdivision 1 of section 6239, a petition shall be filed requesting such action and "shall be signed by qualified electors of the city or town equal in number to twenty-five per cent of those who voted at the last regular municipal election."

■■■ It is the contention of appellant that the petition in this case is entirely insufficient to furnish a basis for the city

council to call an election, because neither the individual sheets nor the petition as a whole had indorsed thereon or attached thereto any affidavit as to the authenticity of the signatures or as to the qualifications of the persons whose names appear thereon in regard to being electors. Appellant cites section 655-a19 of the Code of 1931, which requires that nomination papers for the nomination of candidates for office by petition shall be verified by an affidavit of at least one of the signers of the petition showing the name and residence of the nominee and the office to which he is nominated, that the signers are qualified voters of the state and entitled to vote for such nominee for such office, and that each of the petitioners voluntarily signed the petition. He also refers to sections 541, 640, 5588, 5589, and 6478, of the Code of 1931, in support of his argument that the petitions in this case should have been verified by an affidavit. Section 541 appears in the chapter on nominations by primary election and contains the requirements to be observed in the signing of petitions of nomination. Section 543 in the same chapter provides for an affidavit to be attached to such nomination papers. Section 640, also in the chapter in regard to nominations by primary election, provides that the duty of the county auditor and board of supervisors shall, in municipal elections, devolve upon the city auditor and city council. Sections 5588 and 5589 appear in the chapter concerning the incorporation of towns, the former providing for a petition of qualified electors and the latter requiring proof of the residence and qualifications of the petitioners as may be directed by the court. Section 6478 appears in chapter 326 concerning the government of cities by commission, specifically refers to the petitions provided for in that chapter, and specifically prescribes the requirements of such petitions and the method of proof of the qualifications of the signers thereof. In each of the statutes cited by appellant, the statute itself specifically states the requirements of the petitions in regard to the name, address, and date when signed, and also specifically provides for proof of the qualifications of the signers either by accompanying affidavit or as may be directed by the court. We might add that sections 6497, 6498, 6539, 6544, and 6556, which are not referred to by appellant, although all of them appear in the chapter concerning government of cities by commission, also set out specifically the requirements of the

petitions to which they refer and specifically state the proof required as to the qualifications of the signers.

Section 6242, subd. 1, with which we are concerned in the instant case, does not appear in the same chapter of the Code as any of the statutes above referred to, but is found in chapter 319, which contains provisions in regard to the indebtedness of cities and towns. Neither the section itself nor the chapter in which it occurs contains any provision in regard to the addresses of the petitioners, the dates when signed, the proof of the signatures and qualifications of the signers, nor any other requirement except that ''the petitions shall be signed by qualified electors of the city or town equal in number to twenty-five per cent of those who voted at the last regular municipal election.'' Appellant has pointed out no provision of any statute requiring that petitions generally shall show the addresses, dates of signing, or verification of the qualifications of the signers, where such requirement is not specifically imposed by statute. He refers to the case of Eckerson v. City of Des Moines, 137 Iowa 452, 115 N. W. 177, as authority for the contention that, in defining or interpreting a term used in one statute, the court may have recourse to the meaning as shown by another statute. The principle laid down in that case, however, can have no application to the proposition which we are now discussing, because in none of the statutes to which appellant refers is there any attempt to define or give meaning to what is meant by a petition in general. In each of these statutes provision is made for a particular kind of a petition to be used for a particular purpose, and, in addition to requiring a petition, the statute expressly enumerates in detail the requirements that must be complied with in connection therewith.

█■█ Appellant contends, however, that, even if the petition be not required to have an affidavit showing the qualifications of the signers, in addition to the name and address and date of signing of each petitioner, it is still insufficient because it contains less than 25 per cent of the qualified electors as required by statute. In support of this contention, appellant argues that the term ''qualified electors'', as used in section 6242, subd. 1, means those electors who have complied with the provision of chapter 39-B1 of the Code of 1931, in regard to registration, and that the only names on the petition that can be counted as qualified electors going to make up a number equal

to twenty-five per cent of those who voted at the last regular municipal election are those that are shown on the registration records of the city of Sioux City. It is the further contention of appellant that only those names on the petition that correspond with like names on the registration records can be considered, and that in determining the sufficiency of this petition the registration records must be the controlling factor, just as the poll lists of the last election were controlling in determining the sufficiency of a petition of consent under the law known as the Mulct Act (Code 1897, § 2448, subd. 1). The statute in reference to the petition to be filed under the Mulct Act expressly provided that such petition should be "signed by a majority of the voters residing in such city, voting therein at the last preceding election, *as shown by the poll list of said election.*" (Italics are ours.) Under that statute the names signed to the petition were expressly required to be those of voters "as shown by the poll list." The cases cited by appellant in which such statute was construed held that, according to the express terms of the statute, only those voters who voted at the last preceding election were eligible to sign such petition, and that the poll lists of such election were conclusive evidence as to whether or not one whose name appeared upon the petition had voted. Unless the name on the petition corresponded with that on the poll list, it could not be considered and no other evidence could be introduced, because the poll lists were conclusive evidence. Nothing in either the statute which we are considering in the instant case, or any other statute to which our attention has been called, indicates any intention on the part of the legislature to make the registration records perform a function similar to that of the poll lists under the Mulct Act, and neither the act itself nor the cases construing the act to which appellant has called our attention are, in our opinion, in any way applicable to the question now before us.

Nor do we find anything in chapter 39-B1 concerning permanent registration, to which appellant calls our attention, that in any way indicates that one may not be a qualified voter unless his name appears upon the permanent registration records. Section 718-b3, which prevents one from voting unless registered, says that "no *qualified voter* shall be permitted to vote at any election unless such voter shall register as provided in this chapter." (Italics are ours.) The language used clearly indicates

314

that one may be a qualified voter although not registered, and that one may not vote unless registered even though a qualified voter. We think it is generally recognized that, as said in 20 C. J. 81, "registration is a regulation of the exercise of the right of suffrage and not a qualification for such right." See, also, Edmonds v. Banbury, 28 Iowa 267, 4 Am. Rep. 177; Minges v. Merced Board of Trustees, 27 Cal. App. 15, 148 P. 816; Madison v. Wade, 88 Ga. 699, 16 S. E. 21; State v. Weaver, 122 Tenn. 198, 122 S. W. 465; Wilson et al. v. Bartlett, 7 Idaho 271, 62 P. 416; Fritch et al. v. State, 199 Ind. 89, 155 N. E. 257; State ex rel. Ellis v. Brown, 326 Mo. 637, 33 S. W. (2d) 109.

Where the qualifications of an elector are prescribed by a constitutional provision, an elector is one possessing the prescribed qualifications. In O'Flaherty v. City of Bridgeport, 64 Conn. 159, 29 A. 466, 467, which is perhaps one of the leading cases on this proposition and has frequently been quoted by this court, it is said:

"The constitution has given to the word 'elector' a precise, technical meaning, and it is ordinarily used in our legislation with that meaning only. An 'elector' is a person possessing the qualifications fixed by the constitution, and duly admitted to the privileges secured, and in the manner prescribed, by that instrument."

Article II, section 1, of the Constitution of the state of Iowa, provides:

"Every white male citizen of the United States, of the age of twenty one years, who shall have been a resident of this State six months next preceding the election, and of the County in which he claims his vote sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorized by law."

By amendments to the Constitution the words "white" and "male" have both been eliminated, and the provision is now applicable to "every citizen of the United States" who is able to meet its requirements as to age and residence. That any one who possesses the qualifications set out in this provision of our Constitution is a qualified elector, we think there can be no doubt. In Edmonds v. Banbury, 28 Iowa 267, 4 Am. Rep. 177,

this court, while sustaining the power of the legislature to enact a registration law containing reasonable regulations to prevent fraud and insure the purity of the ballot box, made it plain that such regulations went merely to the exercise of the right to vote and not to qualifications which gave the right, and, referring to this provision of the Constitution, said:

"Whoever possesses the qualifications there mentioned is an elector; and his right to vote, being thus given and secured by the Constitution, is a right of which it is not within the power of the legislature to deprive or divest him.

"It is admitted that these qualifications confer a right. The right thus conferred is the right to vote. This right is held by a constitutional and not by a legislative tenure. It cannot be destroyed or impaired by the legislature."

In the case of McEvoy v. Christensen, 178 Iowa 1180, 159 N. W. 179, 181, there was involved a statute authorizing a school election upon the petition of one-third of the electors residing within certain territory, and the question was raised as to whether or not women, who were authorized to vote at school elections, would be considered as electors. After quoting the O'Flaherty case with approval, this court held that the term "elector" did not apply to women who might be authorized to vote at such election, and said:

"Whenever the legislature employs the word 'elector' without qualification· or explanation, the word may be assumed to have reference to persons authorized by the Constitution to exercise the elective franchise. That instrument (section 1, of article 2) defines who are electors."

See, also, Coggeshall v. City of Des Moines, 138 Iowa 730, 117 N. W. 309, 128 Am. St. Rep. 221; In re Application of Carragher, 149 Iowa 225, 128 N. W. 352, 31 L. R. A. (N. S.) 321, Ann. Cas. 1912C, 972; Sears v. City of Maquoketa, 183 Iowa 1104, 166 N. W. 700.

We reach the conclusion, therefore, that, under the provisions of section 6242, subd. 1, the term "qualified electors" has reference to those persons having the qualifications prescribed in article II, section 1, of the Constitution of this state, without regard to whether or not their names appear on the registration records of the city in which they may reside.

 In the instant case the appellant alleged the insufficiency of the petition filed in the office of the city clerk, and asked that the mayor and city council be restrained from calling the election as therein requested. Upon the trial of the case apellant undertook to prove the allegations of his petition and amendments as to the ineligibility of the petitioners whose names appeared upon the petition. Each of the 353 sheets comprising the petition is addressed to the mayor and city council of the city of Sioux City, and has a printed heading containing the statement: ''We, the undersigned, qualified electors, residing within the corporate limits of the city of Sioux City, Woodbury County, State of Iowa, * * * do hereby petition the city council of said city to call an election,'' etc. On their face each of these sheets, therefore, contained the statement that the names thereon were signed by the persons whose names they purported to be, and that the signers were qualified electors residing within the corporate limits of the city of Sioux City. The burden was upon the appellant to prove the ineligibility of a sufficient number of these names to render the petition ineffective. The evidence shows that as filed the petition contained 8,876 names, that the number of those who voted at the last regular municipal election was 19,764, and that the number of qualified electors whose signatures were required on the petition, in order to give the city council jurisdiction to call an election was, therefore, 4,941.

The final report of the referee finds that there should be withdrawn from the petition as filed 149 names designated as forgeries, 1 name withdrawn by written withdrawal, 190 names designated as duplicates, and 9 names designated as combination names, making a total of 349 names in all to be withdrawn from the petition, and leaving a total of 8,527 names which were reported as legal and proper names and should be counted for the petition. Appellant contends, however, that, aside from the insufficiency of the entire petition because it contained no verification, there were 5,422 names thereon which should not be counted, and that there were only 3,105 names which could be counted as names appearing upon the permanent registration records. Among the 5,422 names which appellant contends should be stricken are 370 names which are alleged to be forgeries and 190 names which are alleged to be duplicates. It should perhaps be said here that the names designated as forgeries,

whether by appellant or in the referee's report, are names which were not signed by the parties whose names appear upon the petition but by some other person, and that the names designated as duplicates are those where the name of the same person appears more than once upon the petition. The balance of the 5,422 names which the appellant contends should not be counted is made up of names that appellant alleges do not appear upon the registration records at all, or of names which, although similar to those upon the registration records, do not correspond exactly with the names on such records. The referee found, however, that, among the names thus objected to by appellant, there were 2,097 names where a similar name to that of the signer on the petition was found at the same address as shown on both the petition and on the registration cards; that the signatures on the petition representing said names are the signatures of the same persons who signed the registration cards; and that such persons were qualified electors as shown by the permanent registration cards. If these 2,097 names be added to the 3,105 names which appellant admits correspond to the names on the registration cards, there would be a total of 5,202 names of qualified electors whose names appear upon the registration records, or 261 more names than was required to make the petition valid.

The trial court found, as a matter of law, however, that the eligibility of a name to be counted was not restricted to the names which appeared upon the registration records, but that all names of qualified electors within the city which were signed on said petition by such qualified electors should be counted, and, as we have already stated in our discussion of this proposition, we think that there was no error upon the part of the trial court in so holding. After deducting from the petition all names which were claimed by appellant to be forgeries, and all names which were claimed by him to be duplicates, and even allowing the deduction of names of persons whom appellant claims were not residents of the city of Sioux City, but of which there is no competent proof, there would still remain more than 8,000 names on the petition as to which appellant has furnished no competent proof showing that they should not be counted.

■■■ Appellant further contends, however, that the rulings, orders, and decree of the trial court should be set aside and the cause remanded for trial before some other judge upon the evi-

dence taken by the referee, because the Honorable F. H. Rice, before whom the case was tried, beginning with the first report of the referee, was disqualified to act because of his prejudice and interest in the case. Appellant's contention is based upon the fact that the petition to the mayor and city council, which was filed on August 19, 1932, was signed by Judge Rice. Section 10818 of the Code provides that:

"A judge or justice is disqualified from acting as such, except by mutual consent of parties, in any case wherein he is a party or interested, or where he is related to either party by consanguinity or affinity within the fourth degree, or where he has been attorney for either party in the action or proceeding. * * *"

It is claimed that Judge Rice was interested in the case, because he signed the petition along with other electors asking the city council to call an election. The claim that he was prejudiced appears to be based upon the same ground, but, in argument, his holding as to the sufficiency of the petition seems to be stressed as evidence of such prejudice. Inasmuch as we have reached the same conclusion as reached by Judge Rice in regard to the sufficiency of the petition, it would appear that his holding cannot be considered to be evidence of his prejudice.

Apellant cites Foreman v. Hunter, 59 Iowa 550, 13 N. W. 659, in which the justice who tried the case had contributed to a fund for the procurement of a certain witness in that case, and Powell v. Egan, 42 Neb. 482, 60 N. W. 932, in which an applicant for a liquor license obtained the signatures of the village trustees who were required to pass upon the granting or refusal of such license. In our opinion, however, neither of these cases is controlling on the proposition here presented. In the Foreman case, the justice was held not to be disqualified on account of interest, because there was no showing that he had any pecuniary interest in the result of the case. And, although the opinion states that his contribution to the fund for obtaining a witness indicated sufficient feeling to justify a change of venue, no change of venue was asked, and the statement of the opinion in regard to the feeling of the justice being sufficient to warrant a change, if it had been asked, can amount to no more than dictum. Even if this dictum is a correct statement of the law, there is a vast difference between merely signing a petition for

the calling of an election on a proposition and contributing to a fund for the benefit of one side of the case. In the Powell case, the petition signed by the trustees requested the granting of a license, and this was the very question which the trustees were required, in the exercise of their discretion, to pass upon. In the instant case, Judge Rice as well as other signers of the petition, in effect, simply asked that an election be called if the city council found that a sufficient number of qualified electors had petitioned for it. It cannot be assumed that any of the petitioners desired or even impliedly requested the members of the city council to violate their duty and call an election if the number of petitioners was not legally sufficient. In 33 C. J. 992, par. 135, it is said:

"The interest which disqualifies a judge is a direct pecuniary, or direct property interest, or one which involves some individual right or privilege, in the subject matter of the litigation, whereby a liability or pecuniary gain must occur on the event of the suit."

In Foreman et al. v. Town of Marianna, 43 Ark. 324, loc. cit. 329, in refusing to hold that a judge was disqualified to act upon an application to annex territory to a municipal corporation because, as a resident of the corporation, he had voted on the proposition of annexation, it was said:

"It may be hoped that every good Judge in the State is deeply interested in everything that may help or hurt the community; and that he will favor the former and oppose the latter in all legitimate ways. Here the question is not one of taxes and burdens, but one of policy. It does not even appear that, on the whole, the result of annexation, would be to increase or diminish taxes. But that is of no importance. This is not a suit of a personal nature, concerning property or rights of persons. A general interest in a public proceeding, which a Judge feels in common with a mass of citizens, does not disqualify. If it did, we might chance to have to go out of the State, at times, for a Judge. The 'interest' which disqualifies a Judge, under the Constitution, is not the kind of interest which one feels in public proceedings, or public measures. It must be a pecuniary or property interest, or one affecting his individual rights; and the liability or pecuniary gain or relief

to the Judge must occur upon the event of the suit, not result remotely, in the future, from the general operation of laws and government upon the *status* fixed by the decision.''

In Sauls v. Freeman, 24 Fla. 209, 4 So. 525, 528, 12 Am. St. Rep. 190, it was claimed that a judge was disqualified to act upon a controversy as to the change of place of a county seat, because he had signed a petition to the county commissioners asking for an election on the question of such change, and the court said:

''It is true that the same interest that would disqualify a juror will, under our statute, disqualify a judge, but the fact of having signed such a petition is not evidence of any interest within the meaning of the term as used in the statute. Whatever effect it may in its consequences lead to, as to such signers, would result, also, as to any other citizen similarly situated, though not a signer.''

In In re Hague, 103 N. J. Eq. 505, 143 A. 836, loc. cit. 838, the vice chancellor was alleged to be disqualified from acting in a habeas corpus proceeding because of bias and interest, and, in refusing to acknowledge such disqualification, the court said:

''But prejudice growing out of business, political, or social relations is not sufficient to disqualify a judge. 33 C. J. p. 1001. And prejudice against the cause or defense of a party is not a disqualifying prejudice. 33 C. J. p. 1001.

''Generally it is held that an interest which a judge has in common with many others in a public matter is not sufficient to disqualify him. 33 C. J. p. 995.''

See, also, Elliot v. Scott, District Judge, 119 Tex. 94, 25 S.W.(2d) 150; Edwards v. Carter, 167 Okl. 282, 29 P.(2d) 605; Hubbard v. Hamilton County, 113 Tex. 547, 261 S. W. 990; Conkling v. Crosby, Judge, 29 Ariz. 60, 239 P. 506; McMullen v. State ex rel., 93 Fla. 693, 112 So. 462; Los Angeles v. Pomeroy, 133 Cal. 529, 65 P. 1049; Holt v. Holt, 23 Okl. 639, 102 P. 187, 197.

In our opinion, the mere fact that Judge Rice signed the petition asking the city to call the election did not disqualify him from acting in the instant case, because of interest, and there is no evidence which indicates that he was disqualified on account of bias or prejudice.

■■ Further claim is made that, because the petitions were signed by persons who were not even residents of Sioux City, and because of the forgeries which appeared among the signatures thereon, the petition was so imbued with fraud that this court would be warranted in holding it bad in toto. We have examined the evidence in regard to forgeries to which appellant has called our attention and, while it is undoubtedly true that in some instances the names on the petition were not signed by the persons whose names they purport to be, with the exception of a very few instances, there is no evidence that such names were signed without authority or with any ulterior motive. None of the signatures which are claimed to be forgeries has been counted by us in determining the sufficiency of the petition. Even if some of these signatures may have been signed by some person other than the person whose name appeared on the petition without the permission of such person and with a fraudulent motive, this would be no reason why these fraudulent signatures should completely nullify the effect of a petition containing thousands of names which, so far as the evidence goes, were signed by the individuals whose names they purport to be.

We find no reason to disturb the orders and decree of the trial court. The stay order heretofore entered is, therefore, annulled, and the orders and decree of the trial court are hereby affirmed.—Affirmed.

KINTZINGER, C. J., and all Justices concur, except ANDERSON, J., who takes no part.