## Richmond

## H. W. Shelton, Et Al. v. Paul Blessing, Et Al.

April 24, 1967.

Record No. 6390.

Present, All the Justices.

*Edgar Bacon* and *Andrew P. Miller* (*Penn, Stuart & Miller*, on brief), for the plaintiffs in error.

No brief or argument for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from an order of the circuit court directing that an election be held in Scott county to determine whether the qualified voters of the county desire to adopt the county board form of county organization and government, provided for by Article 5, Chapter 14, Title 15.1, §§ 15.1-697 *et seq.* of the Code.

Pursuant to § 15.1-698, Paul Blessing and others (appellees) filed a petition on February 18, 1965, asking the court to order that a referendum be held on that question. The statute requires that such petition be signed by fifteen per centum of the "qualified voters" of the county, and the court referred the matter to a special commissioner with direction to ascertain and report the number of qualified voters in the county and the number and percentage thereof who signed the petition.

The commissioner filed his report on September 18, 1965, describing his methods of procedure and reporting that the number of qualified voters in Scott county at the time of the filing of the petition was 8717, of whom 1433, or 16.4 per centum thereof, had signed the petition. The commissioner stated that he held a formal hearing on the matter on April 14, 1965, after publishing a notice thereof once a week for two successive weeks in a newspaper of general circulation in the county, but no person other than a few spectators appeared or requested to be heard. On September 24, 1965, H. W.

Shelton and others (appellants herein) filed exceptions to the commissioner's report, which the court overruled and the report of the commissioner was confirmed in all respects and the election directed to be held by order entered September 30, 1965, from which the appellants have appealed.

While the appellants attack the accuracy of the commissioner's report, they have not included the report in the printed record. They have printed only the order of September 30, 1965, their notice of appeal and assignments of error, and the testimony of twenty persons as to their signatures on the petition. This is not a compliance with Rule 5:1, § 6, which is designed to have the printed record contain the parts of the trial record necessary to a proper disposition of the questions presented on appeal. See *Luhring* v. *Finley, Inc.*, 202 Va. 260, 117 S.E.2d 126; *Frye* v. *Alford*, 203 Va. 461, 125 S.E.2d 177; paragraph (f) of Rule 5:1, § 6.

 Appellants' first contention is that in ascertaining the number of qualified voters in the county, the commissioner improperly excluded persons who had not paid a poll tax. The commissioner found, without objection, that "qualified voters," as used in § 15.1-698, meant persons qualified to vote in an election if one were held at the time of the filing of the petition, in which event § 24-22 of the Code prescribed the qualifications of the voters.

Section 24-22 provides that at any special election held before the second Tuesday in June in any year, any person shall be qualified to vote "who was so qualified at the last preceding regular November election [1964 in this case], or who is otherwise qualified to vote, and has personally paid, at least six months prior to the second Tuesday in June of that year, all State poll taxes assessed or assessable against him during the three years next preceding that in which such special election is held * *."

The commissioner accordingly found that in determining the number of qualified voters in the county at the time of the filing of the petition, and who signed the petition, the basis should be those who were qualified at the preceding November election and those since properly qualified.

Section 24-17 of the Code, in effect at the time of the 1964 election (Acts 1963, Ex. Sess., c. 2; Code, 1966 Cum. Supp.), provides that a person entitled to vote in a general election, in addition to age, residence and registration requirements, must have paid "all State poll

taxes assessed or assessable against him for the three years next preceding the year in which such election is held * *."

Section 24-17.1 of the Code, enacted at the same extra session of the General Assembly, provides that voters otherwise qualified may vote in primary or other elections for President and other named Federal offices, "and no other," without payment of any poll tax. At the 1964 general election candidates for the named Federal offices were voted on. Appellants argue that the commissioner should have included in the number of qualified voters in the county those qualified under § 24-17.1. To the contrary, they were not qualified voters in this special election by the express limitation of the statutes.

The amendment of § 24-17 and the enactment of § 24-17.1 were accomplished, as stated, by Chapter 2 of Acts of the General Assembly, Extra Session, 1963, which specifically stated that it was passed "(1) to enable persons to register and vote in Federal elections without the payment of poll tax or other tax as required by the 24th Amendment to the Constitution of the United States, (2) to continue in effect in all other elections the present registration and voting requirements of the Constitution of Virginia, * *."

Section 21 of the Constitution of Virginia requires, as a prerequisite to the right to vote for officers elective by the people, the payment of poll tax for the three years preceding the election; and § 24-22 of the Code makes the same requirement of voters at a special election.

But, say the appellants, the Supreme Court in *Harper* v. *Virginia State Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.ed. 2d 169 (March 24, 1966), held that the Virginia poll tax requirement as a condition for voting was unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, and hence the commissioner should have disregarded the references in § 24-22 and § 24-17 to the payment of poll tax and should have ascertained the number of qualified voters in the county by reference to the registration books of the county precincts.

That case has no application to the statutory definition of a qualified voter of Scott county on February 18, 1965.

The act of calling the election involved no constitutional question. We are here concerned only with a State statute, which provides for the calling of a special election to determine a State question with respect to the form of government of a county of the State. It deals only with the question of how such an election may be called. It

provides that such an election shall be called by the court if fifteen per centum of the qualified voters of the county ask the court to call it, and qualified voters under State law were those who had registered and paid their poll taxes as required by the Constitution and statutes of the Commonwealth. The General Assembly could just as well have fixed some other prerequisite for calling the election. In fact it did so in the statute, § 15.1-698, and provided therein that in lieu of a petition of the qualified voters the court could call the election if the board of supervisors passed a resolution asking for it.

Appellants next contend that the number of qualified voters in the county reported by the commissioner was too low because he did not include persons in active military service who could have voted in Scott county without registering or paying the poll tax. Va. Const., Art. XVII, § 1; Code § 24-23.1.

The commissioner reported his efforts toward getting information on this subject but stated that the number of such persons was impossible to ascertain.

The appellees suggest several things that in their opinion the commissioner might have done, such as communicating with the Department of Defense or perhaps examining the records of the Selective Service Board of Scott county and affidavits required by Code §§ 24-23.1 and 24-23.4 of servicemen who voted in the 1964 election.

However, these are suggestions now made in the appellants' brief. They apparently were not made to the commissioner and the record does not establish that they were made to the trial court. These records, if now existing, were as available to the appellants as to the commissioner. Not only did the appellants fail to make any request that the commissioner consult such records, they put nothing into the record to indicate what the result of such an examination would have been or how it would or should have affected the findings of the commissioner or the court. The appellants merely assert in their brief that by this alleged omission the number of qualified voters in the county "was greatly decreased." Such assertion is not enough to warrant setting aside the commissioner's report and reversing the order of the court approving it. The burden of establishing the invalidity of the petition was upon the appellants who challenge its sufficiency. *State ex rel. Bess v. Black*, 149 W.Va. 124, 139 S.E.2d 166; *Shelton v. Lambert*, (Okla.), 399 P.2d 467; *Piuser v. Sioux City*, 220 Iowa 308, 262 N.W. 551, 100 A.L.R. 1298.

Finally, appellants contend that there were not 1433 valid

signatures to the petition, as reported by the commissioner, because some of the names were signed by others than the voters themselves. The record shows that of the 138 persons called to testify before the commissioner, 22 had not signed the petition themselves. Of these 22, some had given prior authority to sign their names, some gave their approval of the signing after it had been done, and in one instance a husband signed the names of his wife and two sons. The wife gave her approval afterwards but there was no evidence as to whether the sons approved or disapproved.

The commissioner stated in his report that in these instances a close family relationship existed and that the act of signing was either ratified or authority had been granted prior to the signing. The commissioner further said that he invited counsel on both sides to submit authorities as to the law on the subject, but he received no response.

As a general rule signers of petitions must personally affix their signatures; but it has also been held that a petitioner's name may be signed by another in the presence of the circulator and the petitioner by direct authority and at the request of the petitioner at that time. 82 C.J.S., Statutes, § 123 c., p. 213; *Sayman* v. *Becker*, (Mo.), 269 S.W. 973; *State ex rel. Kugler* v. *Tillatson*, (Mo.), 312 S.W.2d 753.

Our statute, § 15.1-698, requires that the petition for the referendum be "signed by" qualified voters. We hold it to be permissible for a petitioner's name to be signed by another if authorized by him and done in his presence. Signing by another out of the presence of the person whose name is signed, even with prior authority or subsequent ratification, affords too much room for fraud and we hold such signing to be ineffective and not within the requirement of the statute.

Some of the questioned signatures met the stated requirement, but if all the twenty-two signatures referred to be eliminated, the result is not changed. It reduces the number of valid signatures to 1411, which is more than the required fifteen per centum of the qualified voters of the county. See 26 Am. Jur. 2d, Elections, § 189, p. 17; *Piuser* v. *Sioux City, supra.*

Appellants say that if the ratio of 22 (who did not personally sign) to 138 (the number who testified before the commissioner) be applied to 1433 (the number of signatures on the petition as found by the commissioner) and the result subtracted from 1433, the number of signatures remaining would be less than fifteen per centum of the qualified voters. Other methods might also be used to get the same

result, but speculation does not take the place of evidence and, as stated, the burden is on the appellants to establish the invalidity of the petition.

The order appealed from is affirmed and the case is remanded to the trial court for the entry of an order fixing the date for holding the election.

*Affirmed and remanded.*