Jay W. GOULD, III, a resident of the City of Bloomington, Minnesota, Respondent,

v.

The CITY OF BLOOMINGTON, et al., Appellants.

No. C8–86–440.

Court of Appeals of Minnesota.

Sept. 30, 1986.

Mark D. Luther, St. Louis Park, for respondent.

Floyd B. Olson, Bloomington, for appellants.

Heard, considered, and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

The City of Bloomington, its mayor, clerk, and city council members appeal from an order granting the motion of Jay Gould, III, for a writ of mandamus. The writ directed the City of Bloomington to certify as sufficient a voter referendum petition relating to the repeal or submission of a Bloomington ordinance which raised the salaries of certain of Bloomington's elected officers. Appellants claim that the trial court incorrectly interpreted the definition of "qualified electors" required to

sign referendum petitions. Appellants also claim that regardless of the sufficiency of the signatures on the petition, the salary ordinance in question is not subject to voter referendum. We affirm.

## FACTS

Bloomington, Minn. Ordinance 86–3 (Jan. 13, 1986) increased the salary of the mayor from $15,000 to $19,000 annually, and increased the salary of the other six council members by $500 annually. Gould, a resident of the City of Bloomington, together with a group of citizens, obtained 1098 signatures on a petition for a voter referendum on this ordinance.

After the petition was submitted to the city clerk, the clerk certified the petition as insufficient, based on her interpretation of "qualified electors" as registered voters. Appellants argue that only "registered" voters are qualified. Gould agrees that 891 signatures of qualified electors were needed for a valid petition. Gould agrees that only 649 of his petition signatures were of registered voters. However, Gould claims that "qualified electors" need not be registered to vote, but only must be eligible to vote, i.e., be eighteen, a United States citizen for at least three months, and maintain a Minnesota residence for 20 days preceding an election. Minn. Const. art. VII, § 1; Minn.Stat. § 201.014 (1984). Thus, Gould argues that the 1098 signatures presented were all valid and more than enough to force a voter referendum.

Respondent sought a writ of mandamus to compel the City of Bloomington, its mayor, council members, and city clerk to accept the petition as valid and hold a referendum on the salary ordinance. The trial court granted the petition and the city, mayor, clerk, and council members appeal.

## ISSUES

1. What is a "qualified elector" as required by Bloomington, Minn. Charter § 5.10?

2. Is Bloomington, Minn. Ordinance 86–3 (Jan. 13, 1986) subject to the voter referendum provision of the Bloomington City Charter, even if a sufficient number of qualified electors sign a petition?

## ANALYSIS

All issues presented are legal, so we need accord no deference to the trial court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

### I.

*"Qualified elector"*

Section 5.10 of the Bloomington City Charter states:

Within 15 days after the date when an ordinance takes effect a petition signed by *qualified electors* of the city equal in number to 15 per cent of the total vote at the last regular municipal election is filed with the city clerk requesting that any such ordinance be repealed or be submitted to a vote of the electors, the ordinance shall thereby be prevented from going into operation.

(Emphasis added.) Appellant maintains that "qualified electors" means *registered* voters and does not include persons eligible to vote but who have not registered. We find *Eastwood v. Donovan*, 259 Minn. 43, 105 N.W.2d 686 (1960) contrary to appellant's position and controlling on this issue.

*Eastwood* interpreted "electors" under Minn.Stat. § 202.09, subd. 1. Section 202.09 governs nomination by petition of candidates for congressional representative. The court held that

"elector," as used in the statutory provision under consideration, means one who has a constitutional and statutory right to vote, *whether or not such right is exercised by registration.*

*Id.* at 47, 105 N.W.2d at 688 (emphasis added). The court relied on 29 C.J.S., Elections, § 110:

Except under statute providing otherwise, it is not necessary that the signers of a nominating petition be registered voters, provided, of course, they are otherwise qualified to vote.

*Id.* at 45, 105 N.W.2d at 687. *Eastwood* also cited *Piuser v. City of Sioux City,* 220 Iowa 308, 313, 262 N.W. 551, 554 (1935):

> 'registration is a regulation of the exercise of the right of suffrage and not a qualification for such right.'
>
> \* \* \* \* \* \*
>
> That any one who possesses the qualifications set out in this provision of our Constitution is a qualified elector, we think there can be no doubt.

*Eastwood* 259 Minn. at 46–47, 105 N.W.2d at 688.

Finally, *Eastwood* noted:

> Registration does not affect the qualification of a citizen to vote but is simply a legislative requirement enacted to further the orderly conduct of an election.

*Eastwood* at 47, 105 N.W.2d at 688.

■ Op. Att'y Gen. No. R–183 (Sept. 17, 1932) expresses a similar view of a provision in the home rule charter of the City of Albert Lea concerning rights of referendum in respect to ordinances adopted by the city council which provided for signatures by "qualified electors." Opinions of the attorney general are not binding on the courts, but are entitled to careful consideration. *Village of Blaine v. Independent School District No. 12,* 272 Minn. 343, 138 N.W.2d 32 (1965). The attorney general's opinion supports our holding.

Appellants attempt to distinguish *Eastwood* because the supreme court was there faced with the possibility of disallowing the petition signatures of entire voting districts where registration was not required. *See Eastwood* 259 Minn. at 47, 105 N.W.2d at 688 (registration as a prerequisite to the right to vote was not required in the City of Coon Rapids or the county of Isanti). Registration is now required in Bloomington and throughout the state. We also note that registration now can be accomplished on the same day as the election in which the individual wishes to vote. Minn. Stat. §§ 201.018–.275 (1984). *Eastwood* did give the potential exclusion of all signatures from districts not requiring registration as one reason for its decision. How-ever, the court also relied on several other reasons for its decision, as outlined above. We decline to distinguish *Eastwood* on this basis.

Appellants also point out that *Eastwood* interpreted "elector," not "qualified elector." *Eastwood* did, however, rely on several cases which interpreted "qualified elector." The *Eastwood* court also stated that "[r]egistration does not affect the qualification of a citizen to vote," implying that a "qualified elector" need not be registered.

Appellants raise several other arguments. These arguments center on the administrative difficulties faced by a city clerk who must, without the convenience of referring to voter registration lists, certify petitions as sufficient. We merely note that the city may, through an appropriate resolution, ordinance, or charter amendment, require petition signers to acknowledge, in writing, on the petition itself that they meet the constitutional prerequisites for voting, e.g., that they are eighteen years or older, United States citizens for at least three months, Minnesota residents for at least 20 days, have not lost their civil rights, and are not mentally incompetent. *See* Minn. Const. art. VII, § 1; Minn.Stat. § 201.014 (1984). This acknowledgement should eliminate any need for the city clerk to investigate the voting qualifications of each petition signer who has not previously registered to vote.

## II.

### *Subject to referendum*

■ Appellants claim that even if the petition had a sufficient number of valid signatures, the salary ordinance in question is not subject to the referendum provisions of the Bloomington City Charter:

> The people of Bloomington reserve to themselves the power, in accordance with the provisions of this charter, to initiate and adopt any ordinance, except an ordinance appropriating money or authorizing the levy of taxes, to require such an ordinance when passed by the council to

be referred to the electors for approval or disapproval, and to recall elected public officials. These powers shall be called the initiative, the referendum, and the recall, respectively.

Bloomington, Minn. Charter § 5.01. The quoted language is clear that all ordinances, except those appropriating money or authorizing the levy of taxes, are subject to referendum. We hold that the ordinance in question raising salaries is neither a tax levy or an appropriation of money and, thus, is subject to the referendum provisions.

Appellants also claim that Minn.Stat. § 415.11, subd. 1 (1984) removes the power of the people to petition for referendum on this subject:

*Notwithstanding the provisions of any general or special law, charter, or ordinance,* the governing body of any statutory or home rule charter city of the second, third or fourth class may by *ordinance* fix their own salaries as members of such governing body, and the salary of the chief elected executive officer of such city, in such amount as they deem reasonable.

(Emphasis added). Appellants claim that if the legislature had intended salaries to be subject to city charter referendum provisions, it would have said so. We disagree. If the legislature had intended to permit the salaries to be set administratively, without being subject to the power of the people to petition for referendum, it would have permitted salaries to be set by resolution of the city council.

Minn.Stat. § 415.11, subd. 1, merely authorizes the governing body of certain cities to fix their own salaries by ordinance if that power was not previously possessed. The statute does not diminish the right of city voters to petition for a referendum on that ordinance if referendum power was contained in previous legislation. The Bloomington City Charter authorizes a referendum. Bloomington has the right to fix salaries by ordinance; validity of that salary ordinance, however, remains subject to the city charter authorizing voter referendum.

**DECISION**

The trial court did not err in granting the writ of mandamus. "Qualified electors" as used in the Bloomington City Charter, means those who meet the constitutional requirements to vote, and is not limited to those previously registered to vote. Bloomington, Minn.Ordinance 86–3 (Jan. 13, 1986) is subject to voter referendum.

Affirmed.