COUNTY SEAT: REMOVAL: Otherwise qualified voters need not have actually voted at previous election or be registered to sign petition for changing county seat. Minn. Stat. §§ 372.01, 372.03 (1994).

106-e

January 24, 1995

Michelle E. Moren
Roseau County Attorney
309-1/2 Third Street N.W.
P.O. Box 239
Roseau, MN 56751

Dear Ms. Moren:

In your letter to the Office of the Attorney General, you set forth the following:

## FACTS

On January 9, 1995, two petitioners filed a notice of intention to circulate a petition for changing the county seat, pursuant to Minn. Stat. ch. 372 (1994). Minn. Stat. § 372.01 (1994) provides in pertinent part:

When a petition is presented to the auditor of any county in the following form: "To the county board of the county of _____, Minnesota: The undersigned legal voters of this county request that the county seat be changed to (here designate the place)," signed by a least 60 percent of those voting in the county at the last preceding general election, accompanied by affidavits of at least two of the signers stating that

> (a) the petition signatures are genuine,

> (b) they were signed within 60 days before the date of the affidavits, and

> (c) when signing the petition the petitioners were legal voters of the county, and the notice of intention to circulate the petition under section 372.02 was given, the auditor shall immediately file the petition and affidavits, and make, seal, and file in the auditor's office an order for a special meeting of the county board to consider the petition.

You then ask substantially the following questions:

## QUESTION ONE

Does this requirement that the petitions be signed by "60 percent of those voting in the county at the last preceding general election," mean that only individuals who actually voted in Roseau County in November 1994, will be eligible to sign the petition?

## OPINION

While the matter is not free from doubt, it is our opinion that the language referred to does not require that each petition signer must have actually voted in the county in the November, 1994 general election. Rather we believe that the petition would be valid if signed by a number of qualified voters equal to 60 percent of the number of persons voting in the last general election.

Prior to 1985, such was clearly the case. Minn. Stat. § 372.01 (1984) provided in pertinent part:

> When there shall be presented to the auditor of any county a petition substantially in the following form: "To the county board of the county of _____, Minnesota: The undersigned legal voters of this county pray that the county-seat thereof be changed to (here designate the place)," signed by legal voters of the county to a number equal to not less than 60 percent of the whole number voting therein at the last preceding general election . . . the auditor shall forthwith file the petition and affidavits, and make, seal, and file in his office an order for a special meeting of the county board to consider such petition,

This language clearly required only that the <u>number</u> of signers equal at least 60 percent of the <u>number</u> of persons voting at the preceding election. However, that language was changed in 1985 by Act of May 10, 1995, ch. 109, § 3 1985 Minn. Laws at 271 as follows:

> When ~~there shall be~~ a <u>petition</u> <u>is</u> presented to the auditor of any county ~~a petition substantially~~ in the following form: "To the county board of the county of _____, Minnesota: The undersigned legal voters of this county ~~pray~~ <u>request</u> that the county-seat ~~thereof~~ be changed to (here designate the place)," signed by ~~legal voters of the county to a number equal to not less than~~ <u>at least</u> 60 percent of the ~~whole number~~ <u>those</u> voting ~~therein~~ <u>in the county</u> at the last preceding general election, accompanied by affidavits of ~~not less than~~ <u>at least</u> two of the signers ~~thereof~~ stating that, ~~to the knowledge of affiants,~~
>
> (a) the <u>petition</u> signatures ~~to the petition~~ are genuine,

> (b) they were ~~subscribed thereto~~ signed within 60 days ~~preceding~~ before the date of the affidavits, and ~~that affiants are informed and believe that at the time of~~
>
> (c) when signing the petition the petitioners were legal voters of the county,
>
> and ~~it appearing that~~ the notice of intention to circulate the petition ~~provided for in~~ under section 372.02 ~~has been~~ was given, the auditor shall ~~forthwith~~ immediately file the petition and affidavits, and make, seal, and file in ~~his~~ the auditor's office an order for a special meeting of the county board to consider ~~such~~ the petition, ~~specifying therein~~.

See also Id. at P. 273 amending Minn. Stat. § 372.04. Standing alone, this change in wording would suggest a legislative intent to change the 60 percent requirement from a reference to the number of signatures required, to a substantive requirement that the signatories actually be persons who voted at the previous election. For a number of reasons, however, we do not believe such a change was intended. Rather, the 1985 bill itself, its legislative history and the relationship between the subject language and other provisions of Minn. Stat. ch. 372, all indicate that the 1985 amendment was not intended to make a substantive change in the petitioning requirement.

It is elementary that the ultimate goal of statutory construction is to ascertain legislative intent. In undertaking that determination, we may consider, among other things the circumstances under which the law was enacted, the former law, if any, including other laws upon its same or similar subjects and contemporaneous legislative history. See Minn. Stat. § 645.16 (1994).

A review of Chapter 109 of the 1985 Laws in its entirety discloses that, while the bill did effectuate some substantive changes in the law applicable to counties, the majority of changes made in revising each section of eight entire chapters of statutes pertaining to counties were plainly of a housekeeping nature not intended to make any substantive changes but simply to revise the statutory language contained in those chapters.

The presentations to committees in both houses of the legislature considering House File 516, which became Chapter 109, also indicate that the changes to Chapter 472 made in section 3 of the bill fall into the housekeeping category. For example, Representative Virgil Johnson, House author in explaining the bill to the House Local and Urban Affairs Committee, on March 5, 1985, described the proposed amendments to Chapter 372 as follows: "Chapter 372, changing of county seats, that's basically language clean-up and it improves the language determined in deciding petitions to change the county seat."

Dick Cox, counsel for the Associations of Minnesota Counties, also spoke on the bill, and stated:

> House File 516 is actually phase two of a multi-year effort to modernize and systematize and update county statues. It's here before you to remove some of this language, as Representative Johnson points out, that sort of sounds like Dickens or at least Tobacco Road. It has been on the books for a lot of years. In many cases the language goes back as far as we can trace in the official statutes for 1905, the revised laws of that year. Which means, in effect, some of the language was around before that. Probably in the 1800's. Basically we are interested in codification and then update and revision.

In addressing the Senate Local and Urban Affairs Committee on April 9, 1985, Mr. Cox likewise said: "Section 3 of the bill, beginning on page 16, amends Chapter 372. Again, clean-up language on the chapter having to do with changing county seats." A bill summary of "substantive changes" contained in House File 516, prepared by the office of Senate Counsel, was also presented to the Committee. That summary (copy attached) contains no reference to any proposed language changes for Chapter 372.

Our conclusion is further supported by the title to Chapter 109 itself which contains specific references to particular substantive changes which do not implicate Chapter 372, and then indicates that the Act is one "revising the language of the text of chapters concerning county powers and county boards." While the titles of acts of the legislature are not determinative in themselves, they may be referred to in ascertaining legislative intent. See, e.g., County of Hennepin v. City of Hopkins, 239 Minn. 357, 58 N.W.2d 851 (1953).

Finally, section 372.01 as amended remains consistent with itself and other provisions of Chapter 372 only to the extent that the 60 percent requirement is interpreted as referring to the number of signatures needed rather than requiring signers be persons who actually voted at the previous election. Minn. Stat. § 372.01 both before and after the 1985 amendment requires affidavits concerning the petition signatures. I.e., that they are genuine, were signed within 60 days prior to the affidavits and that the signers were "legal voters of the County." Section 372.03, before and after 1985, provides for the Board to inquire into and verify the same conditions contained in this affidavit and also determine whether any signatures have been withdrawn. The board is required to strike from the petition all signatures not meeting the affidavit criteria and any which have been withdrawn. Neither the required affidavits nor the board's review-and-strike authority contain any reference to the question of whether a signer actually voted in the previous election. Had the legislature intended to impose such a new requirement in 1985, it seems clear that parallel changes would have been made to conform the certification and board review provisions to include that requirement. The fact that no such amendments were made is further support for the conclusion that no additional substantive requirements for the petitioners were intended.

For the foregoing reasons, we are of the opinion that legal voters of the county need not have actually voted in the 1994 general election to be counted in determining whether the 60 percent requirement of section 372.01 has been met.

## QUESTION TWO

Must persons be registered pursuant to Minn. Stat. ch. 201 to be considered a "legal voters" eligible to sign a petition pursuant to Minn. Stat. § 372.01 (1994)?

## OPINION

We answer your question in the negative. As you point out, Minn. Stat. § 201.014 (1994) sets forth the legal qualifications concerning a person's eligibility as a voter. See also Minn. Const. art. 7, § 1. The fact that an eligible voter is required to register prior to actually voting does not, in our view, impose an added qualification upon the status of being a "legal" voter. Rather, it is more in the nature of an administrative mechanism whereby that status is to be formally confirmed prior to casting a ballot.

This conclusion is consistent with several Minnesota court decisions and opinions of this office which have addressed the status of unregistered voters as petition signers under various statutes and charter provisions. See e.g., Eastwood v. Donovan, 259 Minn. 43, 105 N.W.2d 686 (1960) ("elector"); Gould v. City of Bloomington, 394 N.W.2d 149 (Minn. Ct. App. 1986) ("qualified electors"); Op. Atty. Gen. 218-C-1 December 11, 1947 ("legal voter"): 106E, March 6, 1946 (legal voters); 183-R September 17, 1932 (qualified electors).

If the legislature intended to impose registration as a condition for signing the petitions, it could easily have imposed that requirement expressly. C.f. Minn. Stat. §§ 6.54, 204C.05, subd. 1b, 340A.416, 340A.602, 351.16 (1994).

Thus, it is our view that registration is not required as a condition for eligibility to sign the petitions pursuant to Minn. Stat. § 372.01.

Best regards,

HUBERT H. HUMPHREY III
Attorney General

KENNETH E. RASCHKE, JR.
Assistant Attorney General

fc4

**Senate Counsel & Research**

ROOM 122 CAPITOL
ST PAUL 55155

John E Frost Director
612 296-3826

COUNSEL
612-296-3011

PETER S WATTSON
JO ANNE ZOFF ZAITZ
DANIEL P MC GOWAN
KATHLEEN E PONTIUS
BILL ? MC DONNELL
CAMERON HOLT
ELIZABETH V REE
BONNE E COWIN
BEVERLY C OWEN
MICHAEL DESANCTIS
GEORGE M MC CORMICK
MARK A HANSON

LEGISLATIVE
ANALYSTS
612-296-7878

WILLIAM RIEMERMAN
JOYCE L ANDREST
FRANK FLO
GLEN
J C KNAPP
JERRY E KNAPP
MARK S SHEPARD
JOHN FOULKES
DONALD A SMITH
NANCY STROUD
JOEL C MICHAEL

TO:      Local and Urban Government Committee

FROM:    Beverly C. Owen, Senate Counsel

DATE:    April 8, 1985

RE:      Bill Summary of ~~~~~~~~ 516, Relating to
         Counties; Substantive Changes

1.  Page 9, lines 15-29.

Repeals limits on the maximum amount that may be paid
to the county auditor to transcribe records when county
boundary lines are changed.  Current law permits the
auditor to be paid six cents per folio.  The proposed
change would allow the county board to set the amount
to be paid.

2.  Page 11, lines 24-36; page 16, lines 25-35, pages
22-23, lines 17-36, 1-14; page 38, lines 4-30; and page
58, lines 1-20.

Changes maximum interest rate on bonds from six percent
to maximum rate authorized under chapter 475.

3.  Page 24, line 16 and page 47, line 11.

Substitutes "landowners" for "freeholders" to update
language.

4.  Pages 42-44, sections 6-9.

Title change from "Executive Secretary" to "County
Coordinator".

5.  Page 44, line 28.

Removes "Sanatoriums" from the title of chapter 376.

6.  Page 45, lines 3, 7.

Substitutes "mentally ill" for "insane".

7.   Page 57, section 11.

Deletes all references to "almshouses".

8.   Page 42, lines 10-14, section 5; and page 59, lines
     4-8, section 12.

Authorizes county boards to reimburse newly elected
commissioners for expenses incurred prior to assuming
office for attendance at a training or education
program which will familiarize them with their official
duties.

9.   Page 61, lines 18-26, section 14.

Increases limit on amount that the county board may
appropriate annually to aid poultry associations from
$100 to $500.

10.  Pages 61-62, lines 27-36, 1-3, section 14.

Increases limit on amount that the county board may
appropriate annually to assist in maintaining an
exhibit of county products at the state fair from $500
to $1,000.

11.  Page 63, lines 13-21, section 15.

Removes reference to poor farms.

12.  Revisor instructions, page 63-64, section 16.

Moves sections 392.06-392.11 regarding the county
purchasing department to chapter 375, the chapter on
county boards.

Moves sections 395.035-395.08, regarding county aid to
poultry associations, county exhibits at the state
fair, and county organization grants for economic and
agricultural development to chapter 375.

The effect of these changes is to incorporate both
chapters 392 and 395 into chapter 375.

13.  Repealer section, page 64, section 17.

Repeals section 374.05, which provides for having
either registered or coupon bonds.  Federal law
requires all municipal bonds that are tax exempt to be
in registered form.

Repeals section 377.02, which provides for payment of
goods delivered or received by the county almshouse.

2

Since almshouses do not exist anymore, the section is obsolete.

**Repeals sections** 392.01-392.03, which permit the county board to appoint a county purchasing agent. Authority to create a county purchasing department is contained in sections 392.06-392.11, so that the sections proposed for repeal are redundant with these sections.

**Repeals sections** 395.01-395.03, which permit the county board to maintain a demonstration farm under the supervision of the department of agriculture of the University of Minnesota. The sections proposed for repeal are obsolete.

**Repeals sections** 395.14-395.24, which permit the county to make seed and feed loans to county residents. The sections proposed for repeal are obsolete.

BCO:cf

3