ELECTIONS: CITIES: Uniform election day statute applies to charter cities transitional provisions discussed. Minn. Stat. §§ 205.02, 205.07, 410.015, 410.21.

64f ·
(Cr. Ref. 63b-5)

October 27, 1995

David J. Kennedy
Kennedy & Graven
470 Pillsbury Center
Minneapolis, MN 55402

Dear Mr. Kennedy:

In your letter to Attorney General Hubert H. Humphrey III you set forth substantially the following:

## FACTS

The City of Crystal operates under a home rule charter originally adopted in 1960 and comprehensively revised in 1993. Chapter 4 of the charter provides for the conduct and holding of municipal elections in the city. Under chapter 4, a general municipal election is held on the first Tuesday after the first Monday in November of the year in which an election is to be held. The staggered terms of elected officials, a mayor and six council members, are three years; thus an election is held each year, except for an occasional year when no term expires. The mayor is elected at large. One council member is elected from each of four wards and one council member is elected for each of two sections (each section composed of two wards). A primary election is also provided for where more than two persons have filed for an elected office.

Laws 1994, c. 646 (the 1994 Act), as amended by Laws 1995, c. 8 (the 1995 Act) relate, by their titles, to "uniform local election procedures," "city elections," "making uniform certain local government procedures" (1994 Act) and "clarifying terms of office and election frequency in certain cities" (1995 Act) (emphasis supplied).

The 1994 Act and the 1995 Act amended Minnesota Statutes, section 205.07, subdivision 1, to provide that (1) cities must conduct regular municipal elections on the November date in either an odd or even numbered year but not both, and (2) the terms of council members must be four years and the term of the mayor either two or four years. The 1994 Act extended the application of Minnesota Statutes, section 205.02, subdivision 2 to Section 205.07, but excepted section 205.07, subdivision 3 relating to referenda

on ordinances changing the municipal election date. Also, the 1995 Act added a new subdivision 3 to section 205.84 relating to elections in wards in statutory cities. Except for the indirect application of amended section 205.02, subdivision 2, there is in the Acts no reference to or use of the term "home rule charter city" -- only the term "city " is used -- nor is there a statement that the Acts apply to home rule charter cities or that there is an intent to modify the terms of office in home rule charter cities.

The 1994 Act, in sections 26 and 27, contains transition provisions to implement a change to odd or even year elections, but the term "city" only is used. The 1994 Act and the 1995 Act amendments to Section 205.07, subdivision 1 are effective January 1, 1998 (see Section 29 of the 1994 Act and Section 5 of the 1995 Act).

You then ask substantially the following questions.

## QUESTION ONE

Does Minnesota Statutes, section 205.07, subdivision 1, as amended by the 1994 Act and the 1995 Act, apply to the City of Crystal?

## OPINION

While the 1994 and 1995 amendments to section 205.07, subd. 1 are not presently effective, it is our opinion that, when those amendments do take effect, section 205.07, subdivision 1 will apply to both home-rule and statutory cities, including the City of Crystal.

Section 205.07, subd. 1 was amended by Act of May 16, 1994, ch. 646, § 6, 1994 Minn. Laws 2492, 2494 (the 1994 Act) to read, in part, as follows:

> Subdivision 1. ~~DATE~~ CITY ELECTIONS. The municipal general election in each ~~statutory~~ city shall be held on the first Tuesday after the first Monday in November in every even-numbered year. Notwithstanding any provision of law to the contrary and subject to the provisions of this section, the governing body of a ~~statutory~~ city may, by ordinance passed at a regular meeting held before ~~September~~ June 1 of any year, elect to hold the election on the first Tuesday after the first Monday in November in each odd-numbered year. ~~A city which was a village on January 1, 1974 and before that date provided for a system of biennial elections in the odd numbered year shall continue to hold its elections in that year until changed in accordance with this section.~~

Section 29 of that chapter provides:

Sec. 29 **EFFECTIVE DATE.**

David J. Kennedy
Page 3
October 27, 1995

Sections 4, 6, and 17 to 20 are effective on January 1, 1998. Section 2 is effective for school board members elected after January 1, 1995.

Act of March 2, 1995, ch. 8, § 5, 1995 Minn. Laws 46, 50 (the 1995 Act) further amended section 205.07, subd. 1 as follows:

**Subdivision 1. DATE OF ELECTION.** The municipal general election in each city shall be held on the first Tuesday after the first Monday in November in every even-numbered year. Notwithstanding any provision of law to the contrary and subject to the provisions of this section, the governing body of a city may, by ordinance passed at a regular meeting held before June 1 of any year, elect to hold the election on the first Tuesday after the first Monday in November in each odd-numbered year. A city may hold elections in either the even-numbered year or the odd-numbered year, but not both. When a city changes its elections from one year to another, and does not provide for the expiration of terms by ordinance, the term of an incumbent expiring at a time when no municipal election is held in the months immediately prior to expiration is extended until the date for taking office following the next scheduled municipal election. If the change results in having three council members to be elected at a succeeding election, the two individuals receiving the highest vote shall serve for terms of four years and the individual receiving the third highest number of votes shall serve for a term of two years. To provide an orderly transition to the odd or even year election plan, the governing body of the city may adopt supplementary ordinances regulating initial elections and officers to be chosen at the elections and shortening or lengthening the terms of incumbents and those elected at the initial election ~~so as to conform as soon as possible to the regular schedule provided in section 412.02, subdivision 1~~. The term of office for the mayor may be either two or four years. The term of office of council members is four years. Whenever the time of the municipal election is changed, the city clerk immediately shall notify in writing the county auditor and secretary of state of the change of date. Thereafter the municipal general election shall be held on the first Tuesday after the first Monday in November in each odd-numbered or even-numbered year until the ordinance is revoked and notification of the change is made.

Pursuant to section 12 of that Act:

Sections 1 to 4, 6, 7, and 9 to 11 are effective the day following final enactment. Section 5 is effective January 1, 1998. Section 8 is effective January 1, 1996.

Thus section 205.07, subd. 1, as it is in effect presently, applies by its terms only to statutory cities.[1] Commencing in 1998, however, the section will apply to "each city." It

---

1. See discussion under question seven, infra.

seems clear that the legislature intended to apply the uniform election day requirements of the section to home-rule as well as statutory cities. Indeed there is no other plausible explanation for striking the qualifying word "statutory" from the category of cities to which the subdivision is addressed.

We are aware of Minn. Stat. §§ 410.015 and 410.21 (1994) which provide:

### 410.015 DEFINITIONS RELATING TO CITIES.

The term "statutory city" means any city which has not adopted a home rule charter pursuant to the constitution and laws; the words "home rule charter city" mean any city which has adopted such a charter. In any law adopted after July 1, 1976, the word "city" when used without further description extending the application of the term to home rule charter cities means statutory cities only.

### 410.21 APPLICATION OF GENERAL ELECTION LAWS.

The provisions of any charter of any such city adopted pursuant to this chapter shall be valid and shall control as to nominations, primary elections, and elections for municipal offices, notwithstanding that such charter provisions may be inconsistent with any general law relating thereto, and such general laws shall apply only in so far as consistent with such charter.

We do not believe, however, that either or these sections prevents application of section 205.07, subd. 1 to the City of Crystal in 1998.

First, Minn. Stat. § 200.02, subd. 8 (1994) defines "city" for purposes of the "Minnesota election law" to mean "a home rule charter or statutory city." Thus the term as used in section 205.07, as amended, has been expressly extended to home rule as well as statutory cities.

Furthermore, notwithstanding the wording of section 410.21, Minn. Stat. § 205.02 as amended by section 4 of the 1994 Act provides as follows:

Subd. 2. CITY ELECTIONS. In all statutory and home rule charter cities, the primary, general and special elections held for choosing city officials and deciding public questions relating to the city shall be held as provided in this chapter, except that this section and sections 205.065, subdivisoin 2 4 to 7; 205.07, to subdivision 3; 205.10; 205.121; and 205.175 and 205.185 205.17, subdivisions 2 and 3, do not apply to a city whose charter provides the manner of holding its primary, general or special elections.

This provision as amended clearly specifies that municipal elections in both home rule and statutory cities are to be held in accordance with chapter 205, with expressly specified exceptions. To the extent that this mandate is incompatible with the language of section 410.21, it is our view that the provision of section 205.02 will control. Minn. Stat. § 645.26 provides that where general provisions of law conflict with special provisions effect should be given to both if possible, and, if not, then the special provisions should normally prevail. Inasmuch as sections 410.21 and 205.02 both deal with application of general law, as opposed to charter provisions in municipal elections, neither would appear to be more general or special than the other. Furthermore, it is not possible to give effect to both. In these circumstances the result will be controlled by subdivision 4 of section 645.26 which gives effect to the law most recently enacted. Section 410.21 was apparently adopted in 1909, and has not been amended. Minn. Stat. § 410.21 (1994), History.

On the other hand, section 205.02, subd. 2 was first enacted in 1983 and most recently amended in 1994 as noted above. Consequently, we think it clear that the legislature intends that the uniform election day provisions of Minn. Stat. § 205.07, as amended, be applicable to all home-rule charter cities when the amendments take effect.

## QUESTION TWO

If the answer to question no. 1 is in the affirmative, is the amendment to section 205.07, subdivision 1 in section 5 of the 1995 Act (mandatory four-year terms for council members, a two- or four-year term for mayor and biennial elections) a special law within the meaning of the Minnesota Constitution, Article XII, section 2, since on its effective date, the amendment will change the city's three-year terms to two- and four-year terms?

## OPINION

We answer your question in the negative. Minn. Const. art. XII, § 2 provides in part:

Sec. 2. **Special laws; local government.** Every law which upon its effective date applies to a single local government unit or to a group of such units in a single county or a number of contiguous counties is a special law and shall name the unit or, in the latter case, the counties to which it applies.

David J. Kennedy
Page 6
October 27, 1995

(Emphasis added.) The legislative act in question simply does not meet the above definition. That definition is based upon the government units to which a new law "applies," not merely upon those which will need to modify past practice in order to comply. On the effective date of the 1994 and 1995 Acts, the amended version of section 205.07, subd. 1 will apply to "each city" in the state. The fact that some, or even most, cities' terms of office and election schedule may already conform to the provisions of section 205.07, in no way exempts them from the acts' "application."

Consequently, we conclude that the acts in question are clearly not special laws within the meaning of article 12 of the constitution.

## QUESTION THREE

If the answer to question no. 1 is in the affirmative, are the Acts effective to require the City of Crystal to take any action prior to January 1, 1998

## OPINION

We answer your question in the affirmative, but we observe that conformity to the pertinent laws as written leads to at least one dilemma for which we can offer no satisfactory solution absent action by the city or legislature.

Sections 26 and 27 of the 1994 Act provide detailed transition schedules which are apparently designed to phase cities into either an even or odd year election rotation by 1998 when the amendments to section 205.07 take effect. Section 26 applies by its terms to "political subdivisions that chose before January 1, 1995 to conduct elections in even years." Section 27 applies to all political subdivisions that did not choose before January 1, 1995, to hold even-year elections.

From the facts supplied it does not appear that the City of Crystal has formally chosen to hold its elections in even-numbered years.[2] Thus, the city would be required to follow the

---

2.   You have indicated that while elections usually occur annually there may be occasional years in which no election is held because no term expires.

David J. Kennedy
Page 7
October 27, 1995

transition scheduled set out in section 27, subd. 2, e.g., officials elected in 1996 will serve until either 2000 or 2002 and those elected in 1997 will serve until 2002, etc.

The potential dilemma we perceive is that these transitional provisions will place Crystal, for example, on a schedule calling for odd-year elections, in default of an affirmative act by the city to establish even-year elections. However, the amended version of Minn. Stat. § 205.07, which will take effect in January 1998, requires the City to conduct even-year elections, in default of an affirmative choice by ordinance to conduct them in odd-numbered years. Thus it would appear that a city which makes no affirmative volitional choice concerning the timing of its elections is required to follow a transition schedule incompatible with the future general law for which the transition is intended.

Cities themselves might resolve this contradiction by either affirmatively electing to hold even-numbered year elections and providing by a resolution or ordinance for an "orderly plan" of transition as permitted by section 26, subdivision 1 of the 1994 Act, or by adopting an ordinance, expressly providing for odd-year elections consistent with the transition called for by section 27. If cities such as Crystal do not take such actions on their own volition, however, it would appear that they will in 1998 be out of compliance with section 205.07 which will require elections in years when no term will be due to expire in the following January.

It appears that this difficulty may have resulted from an oversight by the legislature. To the extent that is the case it would best be resolved by corrective legislative action.[3]

_____

3.   A second possible difficulty arises from the fact that neither transitional schedule provided in the 1994 Act, nor any modification thereto in the 1995 Act, appears to specifically address the transitional timing of mayoral terms in a city which chooses to provide for a two year term for its mayor as permitted by section 5 of the 1995 law. It is not clear whether or not that omission is intentional. However, it does appear that the transitional schedules were premised upon four year terms. Depending upon the draw of lots by the council, it is possible that a mayor's transitional term could be five years.

## QUESTION FOUR

Does Laws 1995, ch. 8, § 6 (adding a new subdivision 3 to section 205.84) apply to the City of Crystal?

## OPINION

While the matter is not entirely free from doubt, we are inclined to the view that the new subdivision may be applied in the City of Crystal. That subdivision provides:

> **Subd. 3. TRANSITION SCHEDULE.** The governing body of a city electing more than one council member in each ward may adopt an orderly transition schedule to biennial November elections in which only one council member in each ward is elected in any municipal general election.

As noted above, the unmodified term "city" as used in the election laws refers to both home-rule and statutory cities. The matter is somewhat complicated here by the fact that subdivision 1 of section 205.84, by its terms, applies only to statutory cities which elect council members by ward. Subdivision 2 which refers to "the city" in addressing redefinition of ward boundaries implies references to the statutory cities referred to in the first subdivision. It might be argued, therefore, that the entire section including the new subdivision 3 should be deemed to deal only with statutory cities. We decline to adopt that construction, however.

The reference to a "a city" in the new subdivision 3 is not expressly or by necessary implication, confined to the statutory cities addressed in the first two subdivisions. Furthermore, in seeking to effectuate the intent of the legislature we should consider both the occasion and necessity for the law and the consequences of any given interpretation. Minn. Stat. § 645.16(1)(6) (1994). Here it appears that the legislature wished to allow cities to provide for staggering of terms within a given ward so that representation of the ward would reflect voters' attitudes on a more timely basis than would occur if two or more representatives with four-year terms were elected at the same time.

We can perceive no reason why the legislature would intend to effectuate that policy only in statutory cities. Indeed it would seem that charter cities are far more likely to have a

governmental scheme that would involve two or more council members running in the same ward. Thus, if we were to interpret the new subdivision as applicable only to statutory cities, its apparent purpose would not be carried out in, perhaps, a majority of cases in which it could prove helpful. Consequently, we conclude that section 6 of the 1995 law may be applied to charter cities.

It also appears that Crystal's scheme can be viewed as "electing more than one council member in each ward." While each ward individually elects only one council member, each ward also participates in electing, and is represented by, a second member. Therefore, in our opinion, Crystal may employ the transitional provision contained in section 6 of the 1995 Act.

## QUESTION FIVE

Does Minnesota Statutes, section 205.07, subdivision 3 apply to the City of Crystal?

## OPINION

We answer your question in the negative. Minn. Stat. § 205.02, subd. 2, as amended by the 1994 Act, expressly provides that section 205.07, subd. 3 does not apply to a city whose charter provides for the manner of holding elections. The material supplied indicates that the Crystal charter contains numerous provisions concerning city elections.

## QUESTION SIX

If the answer to No. 5 is in the negative, is an ordinance changing the election date in Crystal subject to referendum under the city charter?

## OPINION

The answer to this question depends upon the scope of referendum power granted by the charter. Since our office does not generally undertake by way of opinions to interpret local charters[4] we are not in a position to determine the scope of the pertinent charter provisions.

---

4.    See, e.g., Op. Atty. Gen. 629-a, May 9, 1975.

Assuming that the charter is construed to provide for referendum of such an ordinance, however, a referendum could in our view, be held on the issue. Cf. Gould v. City of Bloomington, 394 N.W.2d 149 (Minn. Ct. App. 1986) (upholding a referendum on an ordinance raising city council salaries).

## QUESTION SEVEN

Section 3 of the 1994 Act, amending section 205.02, subdivision 1, was effective August 1, 1994. If the answer to question no. 1 is in the affirmative, does section 205.07 as it existed prior to the 1994 Act apply to the City of Crystal?

## OPINION

We answer your question in the negative. Section 205.02, subd. 2. as amended. provides generally that elections in all statutory and home rule charter cities shall be held as provided in chapter 205. The subdivision then provides home-rule cities express exemption from certain sections and subdivisions of the chapter. This does not mean that each provision of the chapter not so exempted is applicable to every statutory and home rule city in all circumstances. Many parts of the chapter are further limited by their own terms. E.g., Minn. Stat. §§ 205.075 (towns only); 205.84, subds. 1 and 2 (statutory cities only). Likewise, section 205.07, subd. 1, as it exists prior to the effective date of the 1994 and 1995 amendments, applies, by its terms, only to statutory cities.

Therefore, while the City of Crystal is not exempted by section 205.02, subd. 2, the lack of such exemption is, at present, irrelevant. Until the 1994 and 1995 amendments take effect, section 205.07, subd. 1 does not purport to impose any requirements upon the City of Crystal.

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General

KENNETH E. RASCHKE, JR.
Assistant Attorney General